ELLEN F. ROSENBLUM
Attorney General
NATHANIEL AGGREY  #172283
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
Telephone: (503) 947-4700
Fax: (503) 947-4791
Email:  Nathaniel.Aggrey@doj.state.or.us

Attorneys for Defendants Oregon Judicial Department, Emerson, Kamins, Liniger, Mooney, Steele, and Wise

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| TIMOTHY ROTE,<br><br>    Plaintiff,<br><br>    v.<br><br>OREGON JUDICIAL DEPARTMENT, OREGON STATE BAR PROFESSIONAL LIABILITY FUND, HON. ANN LININGER, HON. ALISON EMERSON, HON. JOSEPHINE MOONEY, HON. JACQUELINE KAMINS, HON. KATHIE STEELE, CAROL BERNICK, MEGAN LIVERMORE, MICHAEL WISE, JEFFREY EDELSON, DESCHUTES COUNTY SHERIFF'S DEPARTMENT, MATTHEW YIUM, NATHAN STEELE, WARD GREENE, ANTHONY ALBERTAZZI, JOHN DOES (1-5),<br><br>    Defendants. | Case No.  3:22-cv-00985-SI<br><br>DECLARATION OF NATHANIEL AGGREY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS |

I, Nathaniel Aggrey, declare and say:

1.      I am an attorney licensed to practice law in the State of Oregon.  I am assigned to represent the State defendants in the above-captioned case.

2.      Attached to this declaration is a true copy of plaintiff's complaint in *Rote v. Committee on Judicial Conduct et al*, U.S. District Court of Oregon case no. 3:19-CV-01988. In that case, plaintiff sued the Oregon Judicial Department (OJD), and state court Judges Herndon, Egan, and Steele.

3.      Attached to this declaration is a true copy of the Court *Opinion and Order* in *Rote v. Committee on Judicial Conduct et al*, U.S. District Court of Oregon case no. 3:19-CV-01988. The Court dismissed all claims asserted against OJD and Judges Herndon, Egan, and Steele.

**I declare under penalty of perjury that the foregoing is true and correct.**

EXECUTED on August   17  , 2022.

_____*s/ Nathaniel Aggrey*_____
NATHANIEL AGGREY
Assistant Attorney General

Page 2 -    DECLARATION OF NATHANIEL AGGREY IN SUPPORT OF DEFENDANTS'
            MOTION TO DISMISS
            NA3/cbh/527224267                    Department of Justice
                                                 1162 Court Street NE
                                                 Salem, OR 97301-4096
                                            (503) 947-4700 / Fax: (503) 947-4791

**Bennett-Hunter Carolyn**

| | |
|---|---|
| **From:** | info@ord.uscourts.gov |
| **Sent:** | Monday, August 9, 2021 9:54 PM |
| **To:** | nobody@ord.uscourts.gov |
| **Subject:** | Activity in Case 3:19-cv-01988-SI Rote v. Committee on Judicial Conduct and Disability of the Judicial Conference of the United States et al Amended Complaint |

*CAUTION EXTERNAL EMAIL* This email originated from outside of DOJ. Treat attachments and links with caution. *CAUTION EXTERNAL EMAIL*

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

**U.S. District Court**

**District of Oregon**

## Notice of Electronic Filing

The following transaction was entered on 8/9/2021 at 9:53 PM PDT and filed on 8/9/2021

| | |
|---|---|
| **Case Name:** | Rote v. Committee on Judicial Conduct and Disability of the Judicial Conference of the United States et al |
| **Case Number:** | 3:19-cv-01988-SI |
| **Filer:** | Timothy C. Rote |
| **Document Number:** | 51 |

**Docket Text:**
**Second Amended Complaint . Filed by Timothy C. Rote against All Defendants. (Rote, Timothy)**

**3:19-cv-01988-SI Notice has been electronically mailed to:**

Joseph C. Arellano    joseph.arellano@foster.com, erika.wedenoja@foster.com

Matthew J. Yium    matthew.yium@foster.com, erika.wedenoja@foster.com

Nathaniel Aggrey    nathaniel.aggrey@doj.state.or.us, Carolyn.Bennett-Hunter@doj.state.or.us, Debbie.Sword@doj.state.or.us

Timothy C. Rote    timothy.rote@gmail.com

**3:19-cv-01988-SI Notice will <u>not</u> be electronically mailed to:**

Paul Cirino
U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
555 Fourth Street, NW
Washington, DC 20530

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**Not Available
**Electronic document Stamp:**
[STAMP ordStamp_ID=875559790 [Date=8/9/2021] [FileNumber=7528718-0] [8
39e58dbefc1c3bafb30b15b20516324105627af8bd8065a258b6dbd0327c4acccfb184
720361ed1662bccfa86355bdefe2e19dce672f7fc982c4673faf2b353]]

Timothy C. Rote
24790 SW Big Fir Rd.
West Linn, OR 97068
Phone: (503) 702-7225
E-Mail: timothy.rote@gmail.com
*Pro Se* Plaintiff

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| TIMOTHY ROTE,<br><br>    Plaintiff,<br><br>    vs.<br><br>COMMITTEE ON JUDICIAL CONDUCT AND DISABILITY OF THE JUDICIAL CONFERENCE OF THE UNITED STATES, UNITED STATES DEPARTMENT OF JUSTICE, OREGON JUDICIAL DEPARTMENT, OREGON STATE BAR and PROFESSIONAL LIABILITY FUND, COLORADO JUDICIAL DEPARTMENT, THE HON. ROBERT KUGLER, THE HON. MICHAEL MOSMAN, THE HON. PAUL PAPAK, THE HON. ELIZABETH WEISHAUPL,THE HON. ROBERT HERNDON,THE HON. JAMES EGAN, THE HON. BILLY WILLIAMS (in his official capacity as U.S. Attorney and chief law official in Oregon), THE HON. MARCO HERNANDEZ, THE HON. KATHIE STEELE, CAROL BERNICK (in her official capacity as CEO of the OSBPLF), NANCY WALKER and JOHN DOES (1-5), *et al.*,<br><br>    Defendants. | Case No.: 3:19-CV-01988<br><br>SECOND AMENDED CIVIL RIGHTS COMPLAINT:<br><br>42 U.S.C. § 1983: FIRSTAND FOURTEENTH AMENDMENTS;<br><br>42 U.S.C. § 1985: CONSPIRACY;<br><br>28 U.S.C. § 2201 AND § 2202: OTHER RELIEF;<br><br>OREGON CONSTITUTION ARTICLE I, §8, §10 AND §20;<br><br><br><br>JURY TRIAL REQUESTED |

PAGE 1.   COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

# PREAMBLE

Mark Ciavarella, a Judge of the Pennsylvania Court of Common Pleas, accepted nearly $3 million in kickbacks from the owner and builder of two private prisons that housed juvenile inmates. In exchange, he sentenced children to long stays in juvenile detention for minor offenses. He was convicted of racketeering, money-laundering, mail fraud, tax fraud, and conspiracy to defraud the United States and was sentenced to 28 years in prison. Subsequent to the Judges conviction, the defendants (including the defendants who paid the bribe and state government bodies responsible for overseeing the juvenile programs) entered into a $17 Million settlement in favor of the Plaintiffs.

The acts of collusion and conspiracy by the defendants were designed to hurt plaintiff and his family over a pronounced period of 18 years. The retaliatory acts are unlawful, unconstitutional, substantially unprotected by judicial immunity and are something one migt expect in a third world country. But they happened here. The story follows.

In 2002 three executives of a company owned by Plaintiff started a competing company in Wilmington Delaware. Max Zweizig was the lowest ranking executive of the three. Rote became aware of the plot, a breach of the executives' employment agreement, stopped the plan and removed the ring leader. Zweizig was allowed to stay. Six months later, Zweizig staged a failure of a 120 gig hard drive, a component of a business computer he used from his home in New Jersey. Four months after that Zweizig attempted to extort a raise to complete data processing and return records five months overdue and owed to Allstate (a client of his employer). By the time of the attempted extortion Zweizig had deleted and otherwise removed his employer's owned programming from five servers in two locations and the back-up tapes.

PAGE 2.   COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

Plaintiff Rote passed on the extortion, Zweizig was terminated and the company employer shut down for a time so that a third party consultant could recreate the critical computer programming. The body of evidence confirming the extortion and shutdown included email threats by Zweizig, the testimony by six witnesses and the reports and testimony of three computer forensic experts (one of which was Zweizigs) who confirmed that Zweizig had in his possession the programming he claimed did not exist, destroyed the programming on the 120 gig hard drive by reformatting the hard drive hours before it was returned to Plaintiff on Zweizig'slast day..

In order the shelter the cybercrime and attack on the employer, Zweizig and his girl-friend (Sandra Ware), devised a plan of alleging that Zweizig had been terminated for filing a complaint with his employer and the ODJ alleging over-billing of unnamed client(s). The amount of over-billing was alleged to be some $400, supported by Zweizig and by reference to a spreadsheet Zweizig claimed he received via an email.

Zweizig never produced the email in discovery and refused to turn over the digital email file. The spreadsheet identified no clients and plaintiff refuted the very idea and existence of the spreadsheet. The month in which this uncorroborated $400 was alleged to have occured (by Zweizig) Zweizig's employer billed $400,000.

Plaintiff contends that had this false allegation been levied against a law firm, claiming in that case that an unidentified client had been over billed one hour in a month in which the firm billed 1,000 hours, Zweizig's claim would have been dismissed as lacking evidence, credibility and materiality. The claim would have also been dismissed in short order, within months, and Zweizig would likely have ended up in jail for the cybercrime perpetrated on the employer.

PAGE 3.   COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

In the hands of biased judiciary though, evidence is suppressed and ignored. And when a class of people (business owners let us say) are denied due process and an independent judge, a constitutional right of petition has effectively been abridged.

If judicial immunity truly is to serve as a bulwark of justice, some more clearly defined limit must be placed on it. Logically this limit must arise from the due process clause itself. Clothing a judge with immunity simply because he has performed a "judicial act" overlooks the real-world probability that even judicial acts can be utterly inconsistent with due process. Important personal rights can be destroyed by the mere nod of a judge's head. Judges should not be privileged to violate the rights of citizens unfortunate enough to find themselves in a biased, corrupt, or irresponsible court. When unjust injuries are inflicted by improper judicial acts, the state or its insurers should be forced to bear the cost of the wrongful act, not the individual. Indeed, the history of the 1871 Act reveals that Congress intended to provide just such a remedy.

## COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTION RELIEF

Plaintiff Timothy Rote brings this action for economic, noneconomic and punitive damages and for declaratory and injunction for relief for the defendants abridging, and conspiring to abridge the plaintiff's First and Fourteenth Amendment rights of the United States Constitution and Oregon Constitution.

Plaintiff acknowledges that some of the actions taken by the identified defendant judicial actors are official judicial acts, rendering the judicial actor immune from liability. Some of the acts are not judicial acts and are not immune. With that in mind, however, Plaintiff references Judge Mosman's decision to remove state Malpractice, Breach and RICO claims from Clackamas (18cv45257) to Federal Court (3:19-cv-00082) Mosman knowing full well that he did not have jurisdiction on any action outside of the claim against Nancy Walker. It took two years

PAGE 4.   COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

requiring the Plaintiff to appeal this jurisdiction question to the 9th Circuit, with the defendants all the while licking the ground in abject appreciation for Mosman's abuse.

What stands in the wake of Judge Mosman's decision is absolute affirmation of a culture of retaliation against litigants attempting to fight the type of predatory danger to children that Zweizig represents. Sometimes those acts of protection will lead to a judge being identified as a perpetrator or in a quid pro quo financial relationship benefitting the judge for protection. Judge Mosman's decision was made under the umbrella of evidence showing Zweizig was an active child predator. That evidence was presented in case 3:15-cv-2401 and in the arbitration from 2004-2011, evidence suppressed from a jury to allow Zweizig to lie about the existence of the forensic reports and to prevail in those cases.

On December 21, 2020 Zweizig admitted that he duped the jury and the court. He also made affirmations of the forensic reports, those reports findings that Zweizig engaged in the dissemination of child pornography and other criminal acts. One of those reports was generated by Zweizig's expert Justin McAnn. Even that report was suppressed by the jury.

As grounds therefor, plaintiff alleges as follows:

## INTRODUCTION

1.  Pursuant to 42 U.S.C. § 1983, Plaintiff alleges the deprivation of rights guaranteed to him by the First and Fourteenth Amendments to the United States Constitution and Oregon Constitution Article I, §8, §10 and §20.

2.  Pursuant to 18 U.S.C. § 1964(c), Plaintiff alleges violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) and Oregon RICO under ORS 166.720 against all defendants .

## VENUE AND JURISDICTION

PAGE 5.   COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

3.   This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (Federal question and Defendant United States), 1343 (3) and (4), 18 U.S.C. § 1964, 28 U.S.C. § 2201 (creation of a remedy), and 28 U.S.C. § 2202 (further relief) as this action arises under the laws of the United States.This is an action for injunctive relief and damages  for claims brought under 42 U.S.C. § 1983 for the redress of rights secured by the United States Constitution and for civil violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68 ("RICO") .

4.   Venue is proper in this district pursuant to 28 U.S.C. § 1391. Defendants are residents of multiple States and the District of Columbia, the due process violations occurred in Oregon, New Jersey and Colorado and the United States is a defendant for acts committed in New Jersey, Colorado and Oregon.

### PARTIES

5.   Plaintiff Timothy Rote (Rote) is a citizen of the United States and a resident of the state of Oregon.

6.   Defendant Committee on Judicial Conduct and Disability of the Judicial Conference of the United States ("the Review Committee") is a standing committee established by the Judicial Conference of the United States ("the Judicial Conference") to review orders and actions of the Judicial Councils of the U.S. Circuit Courts of Appeal regarding complaints against judges and judicial discipline under the Act.  The Review Committee derives its authority from sections 331 and 357 of the Act, and from Rule 21 of the Rules for Judicial Conduct and Judicial-Disability Proceedings. The Committee consistently refuses to punish members of the judiciary who retaliate against citizens who publish complaints about the judiciary , allowing the integrity of the litigation process to be abridged. The Committee has specifically refused to take action

PAGE 6.   COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

against Kugler and Mosman who have admitted to threatening the plaintiff with incarceration and assault if plaintiff does not cease exposing the members of the judiciary.

7.    Defendant United States Department of Justice, also known as the Justice Department, is a federal executive department of the U.S. government, responsible for the enforcement of the law and administration of justice in the United States. The United States Department of Justice through Billy Williams engaged in ex-parte contact and conspired with Judge Mosman who then remanded a Clackamas County Court case 18cv45257, dismissed defendant Walker with prejudice in that case, retained without jurisdiction to dismiss with prejudice the remaining defendants and ordered the destruction of the court's and Walker's trial recordings in related federal case 3:15-cv-2401.

8.    Defendant Oregon Judicial Department is the judicial branch of government of the state of Oregon in the United States. The chief executive of the branch is the Chief Justice of the Oregon Supreme Court. The Oregon Judicial Branch has been aware of the abuses of the PLF, payments and benefits to the judiciary and acts of retaliation by Egan and the compromise to due process without intervening.

9.    Defendant Oregon State Bar is a government agency in the U.S. State of Oregon. Founded in 1890 as the private Oregon Bar Association, it became a public entity in 1935 that regulates the legal profession. The public corporation is part of the Oregon Judicial Department. Lawyers are required to join the OSB in order to practice law in Oregon. The Oregon State Bar Professional Liability Fund ("PLF") is organized under the Oregon State Bar, was put on notice of the perjury, subornation of perjury and other crimes perpetrated by the PLF and chose to take no action.

PAGE 7.    COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

10. Defendant Oregon State Bar Professional Liability Fund, while separately run, operates under the umbrella of the Oregon State Bar. The Oregon State Bar Board of Governors created the Professional Liability Fund in 1977 pursuant to state statute (ORS 9.080) and with approval of the membership. The PLF first began operation on July 1, 1978, and has been the mandatory provider of primary malpractice coverage for Oregon lawyers since that date. The PLF is a captive insurance agency that has no mandatory reporting requirement. The PLF was put on notice of the perjury, subornation of perjury and other crimes perpetrated by Berncik and PLF Vendors and chose to take no action. On information and belief, the PLF's non-immune acts include but are not limited to aiding and abetting the judicial defendants, represented Zweizig in exchange for a quid pro quo agreement with the judicial defendants to dismiss plaintiff malpractice and RICO claims in Clackamas case 18cv45257, and is the RICO enterprise. The PLF maintains offshore account in the approximate amount of $10 Million which it uses to pay bribes to some or all of the named defendants.

11. Defendant Colorado Judicial Department is the Judicial Branch of the State of Colorado, is established and authorized by Article VI of the Colorado Constitution as well as the law of Colorado. The Department was put on Notice that a Federal Judge had interfered with the litigation before Judge Weishaupl in retaliation against plaintiff and took no action to censor Weishaupl or protect due process. Defendant was served and has not responded in this litigation.

12. Defendant Robert B. Kugler is a Senior United States District Judge of the United States District Court for the District of New Jersey and is also serving as a Judge on the United States Foreign Intelligence Surveillance Court. Kugler has engaged in numerous acts of retaliation including but not limited to soliciting the abuse of a public office on multiple occasions, targeting and harassing plaintiff Rote in 2006, 2010, 2014, 2018 and 2019, the details of which

PAGE 8. COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

are outlined below. The source of the angst was Rote discovering that one of Kugler's clerks met with Sandra Ware ex-parte while Kugler had jurisdiction of a case involving Ware's boyfriend, namely Max Zweizig. On information and belief, Ware passed onto Kugler the Jones transcript and attempted to extort Kugler by threatening to reveal numerous private and embrassing facts about Kugler's life, information Ware acquired in a close relationship with Kugler. Kugler threatened Rote on the record during a contempt hearing in New Jersey on July 11, 2005. The Kugler threats included soliciting the U.S. Attorneys office to imprison plaintiff Rote for publishing letters to Kugler about Zweizig's porn and probable connection to the Court. Neither the Clerk for Judge Kugler nor Ware have denied their ex parte meeting and the passing of the Jones Transcript. Ware acquired the Jones transcript on February 2, 2004 and published the transcript to named defendants, who in turn published the transcript to other defendants (including the arbitrator Crow) soliciting retaliation against Rote for publishing the defendants support of child porn and trafficking. .

13. Defendant Michael Mosman is a United State District Court Judge of the United States District Court for the District of Oregon, is the former Chief Judge and also served on the United States Foreign Intelligence Surveillance Court. Judge Mosman engaged in a number of retaliatory acts outside the protection of immunity, including but not limited to unlawfully exercising jurisdiction over state court claims against state resident defendants and dismissed those claims with prejudice (recently reversed by the 9th Circuit), refused to recuse himself while conflicted on litigation involving his personal friend in Nancy Walker, failed to recuse himself on conflicts arising from his financial relationship with the PLF,failed and has thus far refused to disclose benefits received from the PLF and others in quid pro quo agreements,  and on information and belief ordered a clerk to destroy the court's trial recordings in case 3:15-cv-

PAGE 9.   COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

2401, solicited state judicial actors to retaliate against the plaintiff and ordered the U.S. Marshals Service to harass and attack the Plaintiff and Plaintiff's extended family in retaliation for filing this action against the judicial defendants.

14. Defendant Marco Hernandez is a United States District Court Judge of the United States District Court for the District of Oregon. In case 3:15-cv-2401 Hernandez quashed the subpoenas for Nancy Walker's digital recordings of the trial (with no party with standing to object), , refused to allow the jury to be interviewed on the question of impact had the jury seen the forensic reports showing Zweizig's criminal activity (including child porn), quashed the subpoenas of Crow's arbitration file (which likely would have evidence of Kugler's call to Crow), denied Plaintiff discovery and the depositions of Zweizig and Ware, refused to compel arbitration on exactly the same claims involving the same parties Zweizig brought before in 2004-2011 (where arbitration against Rote was compelled), allowed Zweizig to allege claims already denied in prior litigation and strategically suppressed impeachment evidence of the computer forensic reports which paved the way for Zweizig to lie about the content of the forensic reports.

15. Defendant Paul J. Papak is a Federal Magistrate Judge on the United States District Court for the District of Oregon. He was first appointed to this position on September 19, 2005, and his current term will expire on September 18, 2021. Papak confirmed the arbitration award issued by former Defendant and Arbitrator William Crow in 2102 with the full knowledge and body of evidence that Crow had failed to disclose his prior partnership relationship with opposing counsel, that Crow resigned from the engagement, re-engaged as arbitrator and in retaliation ignored all the evidence produced by Plaintiff's company. That evidence included 1,000 documents, the testimony of eight witnesses and the testimony and reports of three computer

PAGE 10.  COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

forensic experts. Judge Papak aided and abetted the unlawful and immoral arbitration award to Zweizig (which included statutory damages under ORS 659A. 199, .230 and post-employment retaliation damages under ORS 659A.030 (1)(f), at the demand of Mosman and Kugler, Judge Papak did, however, confirm that the Zweizig contract mandate to arbitrate applied to post-employment retaliation claims (confirming the opinion of the New Jersey State Court, which compelled Zweizig to arbitration).

16. Defendant Elizabeth A. Weishaupl is a district court judge in Arapahoe County for the 18th Judicial District. She has been in private practice, an Assistant Attorney General for the State of Colorado, and an Assistant U.S. Attorney. She was appointed to the bench in 2008 and has presided over criminal, civil, domestic, probate and juvenile matters since that time. Weishaupl received the Jones and Kugler transcripts and in June 2014 took a call from Robert Kugler, who solicited a trial ruling against plaintiff Rote's controlled companies on a Denver action against Silicon Valley Bank.

17. Defendant Robert Herndon was the Chief Judge in the Clackamas County Circuit in Oregon. Herndon joined the Clackamas County Circuit Court in 1997, has retired from the bench and practices law in Oregon. Herndon ignored the U.S. Marshals evidence and has confirmed he had a quid pro quo relationship with the PLF at the time his opinion granting the anti-SLAPP for the benefit of the PLF.

18. Defendant James C. Egan is the Chief Judge of the Oregon Court of Appeals. The Oregon Court of Appeals is the state intermediate appellate court in the State of Oregon. Part of the Oregon Judicial Department, the Oregon Court of Appeals has thirteen judges and is located in Salem, Oregon. Prior to be appointed the Oregon Judiciary, Egan practiced law in Albany Oregon specializing in employment law. Egan, who previously represented Zweizig, conspired

PAGE 11.  COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

with the other defendants named in this case and solicited the Oregon Court of Appeals justices

to AWOP the anti-SLAPP against plaintiff and in favor of the PLF, ignoring subpoena evidence

from the U.S. Marshals Service indicting the PLF actors with perjury and false swearing.

19. Defendant Billy J. Williams is United States Attorney for the District of Oregon,

effective on December 12, 2015. Billy Williams has served as the Acting United States Attorney,

for the District of Oregon since May of 2015.  He has been with the U.S. Attorney's Office since

October of 2000.  Prior to his role as Acting United States Attorney, he served as the First

Assistant, Chief of the Criminal Division and Chief of the Violent Crimes Unit. Williams

contacted Mosman ex-parte when representing the United States in Federal case 3:19-CV-00082

and had aided in the cover up of a back dated order to dismiss Walker with prejudice.

20. Defendant Kathie Steele is the Chief Judge of the Clackamas County Court, assuming

that role after Robert Herndon retired. Steele intervened for the benefit of Max Zweizig in

Clackamas cases 19cv14552, 19cv01547 and 18cv45257. Judge Steele instructed Judge Lininger

to grant anti-SLAPP Motions and award legal fees supported only by fraudulent fee petitions for

the sole purpose of attacking Plaintiff.

21. Defendant Nancy Walker is a court reporter for the U.S. District Court of Oregon and as

an independent contractor produces trial transcripts for a fee. Walker published knowing false

draft and final trial transcripts in 2018 and destroyed her digital recordings at the request of

Mosman and perhaps other judicial actors while under subpoena and litigation hold notice.

22. Defendant Carol Bernick is the Chief Executive Officer of the Oregon State Bar

Professional Liability Fund ("PLF"). She is the recipient of the Peter Perlman Service Award

from the Litigation Counsel of America and a Fellow in the College of Labor & Employment

Lawyers.  She previously was a member of the board of the Multnomah Bar Association, where

she chaired the Judicial Selection Committee and to this day exercises power and influence over

judicial appointments and due process. Bernick has solicited and endorsed most of the ten acts of

perjury and subornation of perjury and engineered the assignment of pro tem Judges friendly to

the PLF. Bernick also authorized the gratis representation of Zweizig (in multiple state cases)

without mandate and requirement, in fact in violation of the PLF charter, at the request of

Mosman and Kugler. Zweizig confirmed his free representation by the PLF, and that he did not

solicit that representation, in his deposition on December 21, 2020.

23. Defendant Kathie Steele is the Chief Judge for in the Clackamas County Circuit in

Oregon. Judge Steele's staff  refused to allow plaintiff Rote to file documents into several cases

in a series of reverse discrimination, effectively denying plaintiff access to litigation as a right of

due process. On information and belief, Kathie Steele knew of these acts, endorsed them, also

solicited the PLF to represent Zweizig and strategized with Michael Mosman on how best to

retaliate against plaintiff. The non-judicial acts of Judge Steele include but are not limited to

soliciting Judge Ann Lininger of the Clackamas County Court to award excessive and unlawful

legal fees to Zweizig in an anti-SLAPP Motion striking plaintiff's and plaintiff's wife

counterclaims for interference with contract and slander of title.

24. Defendant Nena Cook became the  Chief Executive Officer of the PLF effective January

1, 2020. Cook has been a civil litigator in Oregon for more than 25 years.  Most of her legal

career has been spent with two mid-sized Portland law firms, Ater Wynne LLP and Sussman

Shank LLP. Until recently Cook was hired by the PLF to provide free legal services to Max

Zweizig, a non-attorney, in Clackamas County Case 3:19-cv-14552. On information and belief

the representation was based on a request by Mosman and other defendants targeting plaintiff

PAGE 13.  COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

Rote for naming Walker as a defendant in Clackamas case 18cv45257 and for opposing the decriminalization of pedophilia.

## STATEMENT OF FACTS

25. In 2001 The Hon. Robert E. Jones presided over a case in which plaintiff Sean Jones brought an action for breach of contract and FCRA violations against a company owned by Rote. Sean Jones was terminated for intercepting, opening and responding to Rote's personal mail, a federal crime. Jones did not refute the criminal conduct.

26. Upon the defense resting, the court instructed the jury and in a last minute change to the jury instructions the court effectively vitiated the defendant's affirmative defenses and counterclaims.

27. The jury returned with a small verdict in favor the plaintiff.

28. Shortly thereafter plaintiff Sean Jones alleged the Hon. Robert E. Jones was a family member.

29. Rote responded by asking the Judge via letter to recuse himself from post-verdict jurisdiction and Judge Jones did so with fanfare. The hearing on recusal will be referred to hereafter as the "Jones Transcript." There is little information supporting a conclusion that the subsequent chain of civil rights violations were designed and executed by Judge Jones, but it is abundantly clear that the defendants consider the publishing of the Jones family relationship worthy of punishment. **(The First Act)**. Plaintiff does not believe Judge Jones was involved with these civil right violations, but it is also abundantly clear that Judge Jones had knowledge of the transcripts being filed, knew they were being used to abridge due process and did nothing to stop the abuse.

PAGE 14.  COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

30. Post judgment jurisdiction was transferred to Multnomah County Oregon and Rote had his company pay the judgment soon thereafter. Opposing counsel was suspended from the practice of law shortly thereafter for abuse of process, which Rote's company encountered in a fraudulent garnishment.

31. In 2003, Max Zweizig, an employee of a different company (owned by Rote) conspired with his girlfriend Sandra Ware (Rutgers Law School graduate) to perpetrate a fraudulent employment claim against Rote and the employer Northwest Direct ("NDT").

32. As part of that scheme, Zweizig destroyed and removed programming code critical to his employer over a six month period of time. When the time was ripe and the programming was erased, hard drives overwritten, etc., processed data and reports withheld from clients, Zweizig and Ware attempted to extort a substantial raise from Rote.

33. Rote rejected the extortion attempt and upon Zweizig filing data due clients, Zweizig was given notice. It appeared at that point that Zweizig had been under some pressure and Rote sought to get Zweizig into counseling and to retrieve from him the critical programming code that Zweizig withheld.

34. Initially Zweizig responded well, but then refused to turn over the programming, instead choosing to file a complaint (three weeks after being given notice by Rote) with the Oregon Department of Justice (ODJ) and Lane County District Attorney claiming his employer was over-billing clients.

35. Defendant and then attorney James Egan filed that complaint on behalf of Zweizig, without a scintilla of evidence, after talking to Zweizig's NJ attorney. Later Egan would testify during the 2010 arbitration that he did not know Sandra Ware was Zweizig's girlfriend.

PAGE 15.  COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

36. The ODJ opened an investigation. Evidence was requested. No evidence was provided by Zweizig or Egan and the investigation was closed down.

37. Zweizig also filed with Rote a spreadsheet as the sole piece of evidence. Zweizig claimed to have received the spreadsheet via email, but no such email has ever been provided by ZweizigThat spreadsheet remains uncorroborated.

38. Rote investigated, found the spreadsheet to be a fabrication by Zweizig, no clients were identified, there were hourly adjustments but Rote's company rarely billed by the hour, no one corroborated the spreadsheet, and the amount in question was nominal $400 (in a month in which the employer billed $400,000).

39. Zweizig refused to provide copies of employer owned software programming before or after his last day of employment which ended on November 14, 2003.

40. After Zweizig's last day, Rote's company shut down for 10 days as the programming was recreated, the shutdown displacing more than 150 employees.

41. In 2004 Zweizig filed a complaint in New Jersey state court for retaliation against former employer Northwest Direct ("NDT") and Rote alleging retaliation claims. NDT and Rote ordered counsel to transfer the case to Federal Court based on diversity.

42. The case was assigned to Judge Robert Kugler. A Motion to Compel arbitration was filed by Rote and NDT. While under consideration, Sandra Ware met with a Kugler law clerk, a classmate of Ware's, passing to him in person the Jones Transcript.

43. In response, Kugler dismissed defendant's access to federal court with prejudice sending the case back to New Jersey State Court, denying NDT and Rote their procedural right to access federal court.

PAGE 16.  COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

44. Plaintiff asserts that Kugler's decision to not put Rote's counsel on notice to cure any defect in the transfer of the case to Federal Court as being a highly unusual act and self-evident as to prejudice and intent to deny Rote and NDT due process. **(The Second Act)**.

45. Rote responded by sending a letter to Kugler notifying him of the ex-parte contact by Ware and Zweizig, publishing to Kugler the forensic results of a hard drive Zweizig returned on his last showing showing the existence of programming Zweizig denied having and a litany of child incest porn downloaded by Zweizig using a peer to peer program registered in his name. The computer forensic report issued by police officer Steve Williams was filed with Judge Kugler.

46. In response, Kugler issued an order to show cause (Kugler Show Cause) as to why Rote should not be held in contempt for Rote exercising his right of free speech to a judge who had divested the court of jurisdiction.

47. Rote filed a complaint with the Second Circuit.

48. A hearing on the show cause order was heard in Camden Federal Court at great cost to Rote and Kugler attempted to convince the U.S. Attorney's Office to pursue criminal contempt for Rote sending the letter. **(The Third Act)**.The United States refused to do so and the hearing was concluded with a finding that Rote did not engage in criminal contempt. Ware and the clerk have never denied the ex-parte handing off of the Jones Transcript.

49. Kugler abused his office and after the hearing requested Rote's counsel join Kugler in chambers where he asked Rote to withdraw his complaint. Rote conveyed to counsel that he refused to do so and counsel advised Rote to leave the state while he still could. On information and belief the Judicial Committee endorsed this retaliatory behavior by Federal Judges against a party who has filed a complaint against a Judge.

PAGE 17.  COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

50. The case proceeded to state court. Zweizig was a subject to a contract that mandated arbitration. The contract was evaluated for conscionability and upheld. Zweizig was compelled to arbitration in Portland Oregon. Zweizig filed the Jones and Kugler transcripts with New Jersey State Court. However, in this case the State Court was not amused.

51. In 2006 arbitration was commenced with Rote and his company as Claimant and Zweizig as Respondent. The arbitration was delayed substantially as Zweizig lost counsel on four separate occasions.

52. In 2009 opposing counsel Linda Marshall appeared on behalf of Zweizig. Marshall submitted to arbitrator William Crow both the Jones and Kugler transcripts asking the arbitrator to deny Rote and NDT their constitutional right of due process. The 2010 trial transcript in fact documents a cross examination of plaintiff's attorney on the Jones hearing in 2001, but even at that time did not disclose that Crow and opposing counsel Marshall had been partners for 14 years at Miller Nash.

53. Crow cited both the Jones and Kugler transcripts on the record during the arbitration and at one point made snide comments to Rote about his communications. On the record on May 26, 2010, Crow made it clear that publishing to Kugler that Sandra Ware had met ex-parte with Kugler's clerk, had influenced him. Crow seemed to miss the point that the plaintiff and employer were victims of the ex-parte contact between Ware and the law clerk, a meeting which Ware and the clerk have never denied. The transcript of the arbitration on that day intimates a conversation between Kugler and Crow, a conversation which was subsequently confirmed in August 2018. Crow actually demanded an explanation even after Kugler had five years earlier initiated a show cause hearing for contempt, asked the U.S. Attorney's office to prosecute Rote for the notice to Kugler, which the U.S. Attorney's refused to do and ultimately dismissed the

PAGE 18.  COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

contempt hearing with no finding of contempt. The Opinion and award by Crow specifically refused to award damages on the publishing of a letter to Kugler but Crow's animus and bias is reflected in the order.

54. In May 2010 the first of ten (10) arbitration hearings began. Approximately half way through those hearing Rote became aware that Crow and Marshall had been partners at the law firm of Miller Nash at the same time and for some 14 years. Neither Crow nor Marshall disclosed their prior partner relationship.

55. Upon raising the failure to disclose the prior partnership relationship, arbitrator Crow immediately resigned. Marshall told him that the providence of Crow's independence rested solely with the Arbitration Service of Portland (ASP) and Crow re-engaged.

56. The ASP determined that Zweizig would be prejudiced if Crow resigned.

57. Upon rejoining, arbitrator Crow summarily ignored the evidence put on by employer NDT and found in favor of Zweizig, awarding him $67,500 in back pay, $5,000 on an alleged post-employment letter (a letter not in evidence) to a third party and $1,000 for a post-employment unemployment compensation challenge by NDT. On information and belief this act was solicited by Robert Kugler and Michael Mosman **(The Fourth Act).**

58. The evidence ignored by Crow included a hard copy and digital copy of an email terminating Zweizig three weeks before his complaint to the ODJ, the testimony of three witnesses placing the date of notice of termination to three weeks before the complaint to the ODJ by Zweizig alleging overbilling of clients(and alleged retaliation for doing so), the testimony and reports by three forensic experts (including one of Zweizig's experts) opining that the digital email terminating Zweizig was evaluated and confirmed as having been sent three weeks before Zweizig's complaint.

PAGE 19.  COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

59. Crow also ignored all evidence of damage caused by Zweizig including emails from Zweizig claiming that there was no program code to process and report on 100,000 bits of data daily, the testimony of the expert hired to search and then recreate the programs, the testimony of three witnesses that knew the programming existed and was withheld by Zweizig and the testimony of three computer forensic experts (one of them Zweizig's) who opined that the programming was in fact found on a hard drive reformatted by Zweizig on his last day. Those forensic reports and the testimony of the experts was placed in the record in each of the cases referenced in this complaint.

60. Crow ignored more than 1,000 documents and the testimony of ten witnesses. Ethics complaints were filed with the Oregon State Bar for Marshall and subsequent attorneys instructing Zweizig to destroy evidence, for aiding and abetting in his perjury, for lying to Crow and also as to Crow for violating a multitude of ethical mandates.

61. The complaints went to Crow who was then the Chair of the Disciplinary Board for the Oregon State Bar and they went no further. **(The Fifth Act).**

62. NDT filed a Motion to Vacate the arbitration award citing Crow's failure to disclose, his recusal, his re-engagement, his incapacity and complete refusal to consider the evidence of NDT as well as Zweizig's own evidence refuting Crow's narrative.

63. In 2012, Magistrate Paul Papak considered the arguments and while acknowledging Crow's failure to disclose his conflict, lack of independence, apparent lack of capacity and intentional disregard of evidence nonetheless refused to vacate the award. In spite of refusing to consider the merits of the arbitration, Papak did insert knowingly false facts, most prominent of which was a statement that only a hard copy of the email terminating Zweizig was in evidence before Crow, when in fact that was not true. A digital copy of the email terminating Zweizig

PAGE 20.  COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

before his complaint to the ODJ had been maintained and evaluated by three forensic experts. The forensic reports evaluating the digital email, confirming the email was sent to Zweizig terminating him before Zweizig's complaint to the ODJ, was also in evidence with the Motion to Vacate. Papak ignored that evidence. **(The Sixth Act)**.

64. Magistrate Papak's refusal to vacate the arbitration, given the evidence, is self-evident as to prejudice and Papak's intent to deny Rote and NDT due process.

65. Papak was influenced by the Jones and Kugler transcripts as well a complaint filed against Crow (which Marshall noted in her declaration in support of confirming the award) and consciously decided to deny Rote due process.

66. In February 2017, Rote met with Crow and Crow admitted that he did not have the stamina to look at the evidence, had referred Marshall to Zweizig and had used a draft opinion written for him by Marshall. Crow's admission to his inability to exercise the responsibilities of his contract are consistent with the acts solicited by Kugler **(The Seventh Act)**. Plaintiff refuses to name Crow as a defendant out of sincere belief that the parties that manipulated Crow should be held accountable**.**

67. Immediately thereafter Rote filed a Motion to Set Aside the Judgment and Papak refused to consider the evidence. **(The Eighth Act)**.Rote filed a complaint against Papak thereafter.

68.  From 2009 through June 2014, NDT and Rote litigated against Silicon Valley Bank ("SVB") in Arapahoe County Colorado, after SVB had instructed executives of a software company owned by SVB to break into NDT's servers and destroy software. SVB's intent was to use the shutdown it caused to extort a settlement in lawsuit filed by NDT for breach of contract and fraud.

PAGE 21.  COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

69. The dispute was over some $50,000 due Touchstar Software Company on a $250,000 contract, SVB wanting to keep the $200,000 received and take back the software in its entirety. Rote refused to capitulate to the extortion and successfully adjudicated an Emergency Motion to enjoin SVB (and Touchstar) from further destruction and to reinstall the software. NDT prevailed in Denver Federal Court and SVB refused to comply.

70. CEO Rote and former CEO of Touchstar both testified at trial that Touchstar had fraudulently provisioned the hardware and software rendering close to half the software licenses unusable and effectively engaging in a fraudulent bait and switch tactic. NDT sought more than $1.6 Million in damages.

71. On Information and belief, Weishaupl received a copy of the Jones and Kugler transcript and a call from Kugler asking Weishaupl to find against Rote. Although Weishaupl had found in favor of NDT during Summary Judgment, the court found that the product delivered by Touchstar and SVB that rendered half the licenses unusable was not a **material** breach of the contract. **(The Ninth Act)**. Weishaupl published her opinion on July 31, 2014. Kugler was identified by Crow as the judicial actor who solicited Wweishaupl.

72. In 2015, plaintiff Rote began writing articles and posts about the arbitration and litigation with SVB. The evidence from the arbitration represented a bulk of the source material. Rote specifically addressed the evidence the arbitrator ignored. Plaintiff also wrote similar articles about the SVB litigation.

73. Zweizig found the articles and blog posts about the arbitration defamatory and demanded the blog (which contained much more than the Zweizig posts) be taken down. Rote refused to do so, but offered Zweizig anonymity and redaction.

PAGE 22.  COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

74. In Retaliation, opposing counsel Joel Christiansen and Linda Marshall spun a blog post written by Rote (on whether arbitrators are above the law), reached out to deputy clerk of The Hon. Robert E. Jones on November 12, 2015 and conveyed that Rote was going to attend a dinner in the Judges honor and assault, if not assassinate, Judge Jones. Christiansen filed a false declaration misrepresenting the content of his commentary to the deputy clerk, the content of which was eventually acquired from the U.S. Marshals Service.

75. On Christmas Eve Zweizig filed a lawsuit against Rote and former employer NDT in the U.S. District Court of Oregon. Almost immediately opposing counsel filed the Jones and Kugler transcripts asking the court for bias and to deny Rote his rights of free speech and due process. **(The Tenth Act)**.Counsel would file the Jones and Kugler transcripts two more times in the 3:15-CV-2401 lawsuit, each time asking the court for bias, to punish Rote for his free speech and to deny Rote his due process.

76. The Hon. Marco Hernandez did deny Rote due process. Zweizig's claims in the 3:15 lawsuit were asserted as employment claims for retaliation, not for defamation, for publishing the details of the arbitration. As such the employment claims are subject to Zweizig's contract dispute resolution clause requiring notice, mediation and arbitration. Zweizig failed to comply with the contract.

77. Under Oregon law the court has the limited jurisdiction to decide (1) if there is a contract requiring arbitration and (2) if the claims are the type of claims subject to arbitration, such as employment claims. Zweizig sought damages under post-employment retaliation claims citing the contract, the very type of claim he was awarded damages in during the arbitration. The Federal Arbitration Act also limits the review by the court and demands the court compel arbitration as the implicated contract requires.

PAGE 23.  COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

78. And yet the court decided to deny Rote's Motion to Compel, using waiver and non-signatory theories, arguments well beyond the threshold questions before the court under Oregon law. **(The Eleventh Act)**. The court also denied Rote's counterclaim for defamation even though Rote had raised factual defenses to the anti-SLAPP filed by Christiansen on behalf of Zweizig. The court refused to allow plaintiff Rote discovery or to depose Zweizig and Ware. Under the 9th Circuit Courts guidance, anti-SLAPP Motions are to be treated as Motions for Summary Judgment and discovery afforded when there are factual defenses, as in the case where the content of Christiansen's statements to the deputy clerk are challenged and refuted by other evidence. **(The Twelfth Act)**.

79. In 2016 Rote filed a defamation lawsuit against Christiansen and Marshall in Clackamas County Court for statements made alleging Rote intended to attack Judge Jones. Rote became aware of the nefarious contact (but not content) with the deputy clerk since the U.S. Marshals Service got involved and interviewed Rote and Rote's attorney.

80. Judge Robert Herndon presided over the short duration of the case.

81. The Oregon State Bar Professional Liability Fund hired counsel to represent Marshall and Christiansen and counsel filed an anti-SLAPP Motion to Strike Rote's claims arguing the articles and posts were publications on a topic of public interest and in a public forum, also concealing the content of the statements made to Judge Jones deputy clerk. **(The Thirteenth Act)**.

82. During the course of the anti-SLAPP Rote argued that the claims made by opposing counsel had to be dangerous enough for the U.S. Marshals Service to investigate and for the Marshals to place Rote on the watch list at the U.S. District Court of Oregon. Rote offered further evidence that plaintiff has refused to reveal the content of the statements, but had done so

PAGE 24.  COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

in the 3:15CV2401 lawsuit, opposing counsel Christiansen now having admitted that he and Marshall contacted the deputy clerk.

83. Rote asked the Herndon court to accept as evidence that the statements while still concealed must have been material enough for the U.S. Marshals to take action. Opposing counsel hired by the PLF also knowing concealed the content of the statements made by Marshall and Christiansen and misrepresented the content to the court.

84. Opposing counsel hired by the PLF, with full knowledge of Carol Bernick, filed the Jones and Kugler transcripts, asked for and received prejudicial favor denying Rote his constitutionally right of due process. The Herndon court granted the anti-SLAPP. **(The Fourteenth Act)**. Rote appealed.

85. On appeal, Rote argued the clear weight of inference given the fraudulent concealment of the statements published to the deputy clerk. Herndon acknowledged that he was influenced by the Jones and Kugler transcripts and that was asserted in the appeal.

86. After the Clackamas County anti-SLAPP was granted and before the appeal, Rote acquired further evidence from the U.S. Marshals Service via subpoena and FOIA request. The content of the statements made to the deputy clerk, recorded by the deputy clerk and provided to the U.S. Marshals Service, showed that Christiansen had engaged in perjury in his federal declaration in support of the anti-SLAPP Motion and that counsel in the Clackamas County case had also engaged in perjury.

87. An Ethics complaint was filed against Christiansen and Marshall with evidence of his perjury in his declaration and as compared to the U.S. Marshals evidence showing highly defamatory statements made about Rote, statements concealed by Christiansen. The Oregon State Bar took no action for violation of Oregon Rules of Professional Conduct sections 3.3 to

PAGE 25.  COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

3.5. The Oregon State Bar aided and abetted Christiansen and Marshall in their efforts to deny Rote his right of due process. **(The Fifteenth Act)**.

88. The Herndon court refused to consider the U.S. Marshals Evidence while the anti-SLAPP was under appeal. The court further refused to consider the new evidence after appeal, ignoring Oregon law allowing a Motion to Set Aside the Judgment for fraud upon the court and threatening Rote with enhanced legal fees. Herndon denied Rote due process. On information and belief, Paul Papak contacted Herndon requesting that Herndon deny Rote his right of due process. **(The Sixteenth Act)**.

89. By the time Rote filed his appeal with the Oregon Court of Appeals on the Clackamas Court granting the anti-SLAPP, James Egan, former counsel for Zweizig, was on the Oregon Court of Appeals. Rote filed an affidavit on Egan and further sent an email requesting Egan not get involved with the appeal. That request was ignored.

90. On information and belief, James Egan engaged other members of the Oregon Court of Appeals to Affirm without Opinion (AWOP) the Clackamas County Courts decision and to deny Rote his right of due process. **(The Seventeenth Act)**. Egan is now Chief Justice of the Oregon Court of Appeals and is seeking appointment as a Federal Magistrate.

91. The Hernandez court (3:15-CV-2401) further decided just before trial to deny Rote's source material supporting his blog posts, the most important of which was the forensic reports. Plaintiff counsel Christiansen filed a Motion in Limine specifically identifying exhibits Rote sought to present to the jury and which Christiansen described, authenticated and argued supported Rote's posts describing Zweizig's cybercrime, copyright violations, destruction of programming and the downloading and disseminating of child porn using a peer to peer program registered to Zweizig. Until that Motion in Limine was granted, Zweizig had only argued the

PAGE 26. COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

publishing of the forensic reports was a violation of a protective order. After the Motion in Limine was granted, Zweizig took a position the blog posts were untruthful and did not raise the protective order issue during trial**. (The Eighteenth Act)**.

92. Judge Marco Hernandez intentionally made objectively unreasonable ruling to punish Rote for his free speech and to deny his right of due process. Out of the more than 60 exhibits Rote sought to introduce at trial, the court permitted only five (5), and did not permit the forensic reports even for impeachment of Zweizig's testimony. Judge Hernandez would have seen that the forensic reports were referenced as source material in Chapters 4 and 7 of the blog and that the issues raised on child porn, cybercrime , copyright, identity theft and destruction of evidence had not been addressed by Crow in the arbitration. Moreover this evidence specifically rebutted Zweizig's testimony and because it was referenced in the Motion in Limine by Christiansen, did not need to be corroborated further…Zweizig's legal team having done that.

93. In 2018 Rote filed a new lawsuit in Clackamas County seeking again damages for Defamation and IIED for the false and defamatory statements published to Judge Jones deputy clerk, against former PLF counsel for fraudulent concealment of the true statements made to the deputy clerk, for malpractice against Rote counsel for failing to file a Motion to Compel arbitration before answering and against the PLF for refusing to cover the malpractice. The PLF's refusal to cover was based on retaliatory animus for publishing a series of articles critical of the PLF endorsement of perjury and for covering attorneys engaged in retaliatory acts outside the scope of coverage. **(The Nineteenth Act).**

94. Rote also penned a number of articles questioning the propriety of the PLF enjoying tax free status while failing to act in the public's interest as originally conceived, for growing to a financial powerhouse that pays out less in claims as a % of premiums than independent carries,

PAGE 27. COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

for being a captive insurance company and not qualifying for tax exempt status and for concealing what appears to be $2 Million a year in undisclosed payments to outside parties.

95. Rote also renewed his Motion to Set Aside the Judgment for legal fees in the Clackamas anti-SLAPP Motion. Judge Susie Norby was assigned to the case. Rote submitted the U.S. Marshals evidence showing clearly that Christiansen's representation of the statements made to the clerk were tantamount to perjury, that the anti-SLAPP decision should be void as a matter of law and the opportunity for legal fees therefore foreclosed. Norby ignored the evidence and AWOPed the earlier decision. On information and belief, Susie Norby is actively seeking an appointment to Court of Appeals, met with James Egan to garner his support for that position and denied Rote's Motion as an act of solidarity and as requested by Egan. **(The Twentieth Act)**.

96. Also, during this time Rote filed a Motion to Correct the record in the 3:15-CV-2401 case now under appeal. The court transcript was missing two statements made by opposing counsel Christiansen at closing, the most important of which was a false claim that Rote was making $4 Million a year and the jury should award Zweizig's damages accordingly. While that statement was one of 17 prejudicial statements, for which the court did not intervene **(The Twenty First Act)**, Rote asked the court reporter Nancy Walker to check and make sure she did not make an error. Walker maintained she did not make an error.

97. Plaintiff Rote immediately issued litigation hold emails to Walker and the court clerk and offered to pay Walker for copies of the recordings. Walker refused.

98. Rote added Nancy Walker as a defendant in the 2018 Clackamas lawsuit claiming intent to defraud and to create a knowingly false document. Rote subpoenaed the recordings. Walker refused to respond or object to the subpoena.

PAGE 28. COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

99. The United States intervened by an untimely removal of the Clackamas County action to the U.S. District Court of Oregon. The United States argues that the action against Walker was an action against the United States, even though Walker claims personal property ownership of the tapes. Rote objected to the removal and Judge Michael Mosman decided that the court would retain jurisdiction**. (The Twenty Second Act).**

100.    Rote again issues subpoenas to Walker and the Clerk of the Court. The United States responded by arguing the subpoenas should be quashed, the proper process requiring the court to examine exclusively the recordings to determine if the court record needed to be corrected. Judge Hernandez did quash the subpoenas. **(The Twenty Third Act).**The Motion to Correct the record was denied.

101.    After the subpoenas were quashed Rote went to the Court Clerk and filed a form requesting copies of the trial recordings from the court's digital recording system. The clerk could not find any record of the recordings and called Jennifer Padget, deputy clerk for Judge Hernandez. Although plaintiff subpoenaed and put a litigation hold on the recordings, said recordings were destroyed. **(The Twenty Fourth Act).**Who ordered the recordings destroyed is not known and Padgett will not confirm who ordered her to destroy the recordings, but there is a trail. Plaintiff's position is that Judge Hernandez is the only one who could have ordered deputy clerk Paget to destroy the tapes. As previously noted, the United States was aware the tapes of the trial were being destroyed.

102.    On information and belief, court reporter Nancy Walker's trial recordings were also destroyed. The United States has not denied that Walker destroyed her digital recordings. **(The Twenty Fifth Act).**

PAGE 29.  COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

103.      Defendants Christiansen & Marshall (Defamation and IIED), Brandsness (malpractice and breach of contract), The United States, Kalmanson and PLF (and related parties) all filed Motions to Dismiss in 3:19-CV-00082-MO. The court granted all Motions. Brandsness and the PLF were dismissed on malpractice, the court having found that there was no written contract. The written contract was provided as Doc #18-1. Judge Michael Mosman ignored that evidence in the record and further back dated an opinion and order to dismiss Walker with prejudice **(The Twenty Sixth Act)**. On information and belief Judge Kugler solicited this punishment directly with Judge Mosman, both being FISA Court Judges. The 9th Circuit reversed Judge Mosman's dismissal of the state court claims on grounds that Judge Mosman lacked jurisdiction to keep and then dismiss the state court claims.

104. The Intentional Tort and Related Claims against the United States as Nancy Walker were dismissed with prejudice, even after the court knew that Walker had destroyed her digital recordings. Plaintiff position is that tampering with a trial record is common place in the Portland division. **(The Twenty Seventh Act).**

105. There are other cases that could be incorporated in this complaint. For example, Zweizig filed a fraudulent transfer case against Rote personally on the NDT judgment. NDT had been destroyed by the very cybercrime that he and SVB engaged in. Without a scintilla of evidence that case went on for four years, Rote's Summary Judgment having been denied three times. Marshall admitted during the trial the case was used to try to extort payment by Rote. Judge Hernandez found in favor of Rote, the claims not only being time-barred but also that there was no evidence to support the claims. Still Rote was subjected to the high cost of litigation for four years. **(The Twenty Eighth Act).**

PAGE 30.  COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

106. Rote pursued a malicious use of a civil proceeding claim in Clackamas County, case 3:19-cv-14552, against Zweizig and his legal team which includes Sandra Ware, Joel Christiansen and Linda Marshall. The Oregon State Bar PLF provided representation to Christiansen and Marshall immediately. In 2019, plaintiff discovered the PLF has also provided free legal services to Zweizig and Ware. Zweizig also confirmed this representation in his December 21, 2020 deposition and that he had not solicited the representation.

107. In the interim Judge Kathie Steele refused to process plaintiff's Motion for default Judgement against Zweizig and Ware more than four times from June through September 2019. Law clerks working for Judge Steele acknowledged that they were motivated to stop the default out of support for Zweizig,. On information and belief, Mosman solicited this violation of due process directly from Kathie Steele. **(The Twenty Ninth Act).**

108. Once email service to Zweizig and Ware had been approved and with the Fifth Motion for Default pending, the Oregon State Bar PLF, with the approval of Carol Bernick, hired Nena Cook to represent non-attorneys Zweizig and Ware.  The only plausible support for firing to repair malpractice is a letter the Marshall inadvertently issued to plaintiff Rote outlining Zweizig's and Ware's intent to use the baseless 3:14-cv-406 litigation to extort a settlement and defame plaintiff Rote. Ultimately the client attorney privilege letter was sealed under a protective order, but the publishing of that letter to secure PLF representation would remove privilege.

109. Kathie Steele refused to allow Plaintiff Rote to even file a Motion in Clackamas to reopen the protective order under seal. The Clerk was repeatedly told not to process the Motion, forcing Rote to file the Motion to Supplement evidence without seal.

110. Plaintiff suspected the PLF had decided to represent Zweizig out of a retaliatory act given that plaintiff had sued the PLF and Bernick for Oregon RICO citing more than ten counts of

PAGE 31.  COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

perjury, subornation of perjury, fraud, conspiracy and aiding and abetting child porn. **(The Thirtieth Act).**

111. Plaintiff requested confirmation by the PLF on October 1, 2019. Nena Cook did not confirm that she was hired by the PLF until November 14, 2019 and after she filed a false pleading to dismiss Ware from 19CV14552, failing therein to disclose to the court that the letter causing her appointment also vitiates the argument against Ware's argument of lack of jurisdiction. **(The Thirty First Act).**

112. Plaintiff has been unable to confirm if Cook was hired out of retaliation for the OR RICO lawsuit, now with the 9th Circuit, Mosman having dismissed all claims in retaliation for plaintiff whistleblowing on the Nancy Walker and court's transcript tampering out of the Portland Division. Again, plaintiff requested Mosman disqualify himself on any matter involving the PLF. **(The Thirty Second Act).**

113. The PLF has a $100 Million war chest,generates $25 Million year in premium revenue, paying only $2.5 million in claims. The PLF refuses to disclose annually the direct and indirect payments to the judiciary even under an FOIA request. The PLF is considered a quasi-government agency organized under Oregon's Judicial Branch. As of this time, the PLF has refused to respond to a subpoena for documents on coverage of the defendants in Clackamas case 18cv45257 and the coverage of Zweizig and Ware. The PLF's collusion with Judge Mosman and Kugler to dismiss the malpractice claim against Brandsness and the PLF in the amount of no less than $500,000 is one of the many predicate acts to Oregon and Federal RICO, is a violation of the Hobbs Act, 18 U.S.C. § 1951 and may well represent an act of extortion by the PLF. (**The Thirty Third Act**).

PAGE 32.  COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

114. During the Motion to Dismiss the malpractice claim in Federal Court (3:19-cv-00082) before Judge Mosman, counsel for Brandsness hired by the PLF alleged falsely that there was no written contract for professional services between Brandsness and Rote. Judge Mosman used that false allegation to dismiss the malpractice claim with prejudice. The PLF and Mosman knew that was a false representation of facts, constitutes and act of perjury by the PLF and prima facie evidence of a quid pro quo agreement for profit between Mosman and the PLF, represents violations of the Hobbs Act and predicate acts under Federal and Oregon RICO. (**The Thirty Fourth and Thirty Fifth Acts**).

115. Post Judgment, Zweizig filed another fraudulent transfer action against Rote and Tanya Rote, plaintiff's wife. After two years of discovery, the Rote's prevailed on their Motion for Summary Judgment, Zweizig providing no evidence to support his claims. In the interim however the Rote's have again been severely damaged. The Rote's sought counterclaims for slander of title and interference with the contract, Zweizig having filed his action in Clackamas case 19cv01547 in January 2019 just before the closing of a sale of property owned by nondebtor Tanya Rote. Judge Lininger of the Clackamas County Court granted Zweizig's anti-SLAPP Motion as to those counterclaims and awarded $20,970 in attorney fees to Zweizig in July 2020. The fee petition by Zweizig counsel included a declaration and attached billing records by counsel Williams Kastner. Those records showed that 66% of the $20,970 awarded was specifically identified to other actions by Williams Kastner and not reasonably connected to the anti-SLAPP. The fraudulent fee award was solicited by Steele, Mosman and the PLF and constitutes a violation of the Hobbs Act, and predicate acts under Federal and Oregon RICO. (**The Thirty Sixth Act**).

PAGE 33. COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

116. On December 21, 2020 (case 19cv01547) admitted in a deposition and under oath that he duped the jury in case 3:15-cv-2401, lying about the existence of forensic reports showing that he did download and disseminate child porn from an employer owned computer used exclusively by Zweizig in his home in New Jersey from 2001 through mid-May 2003. Zweizig admitted that his former attorney, Ward Greene, resigned after evaluating the computer forensic reports showing Zweizig's child porn and other criminal activity. Zweizig admitted that his former attorney, Ward Greene resigned no longer wanting to be associated with Zweizig and the raping of children. Zweizig admitted that the PLF represented him in cases 19cv14552 and 19cv01547, without request or repair and on information with the full knowledge that Zweizig is still engaged in the dissemination of child porn. Representation was solicited by the defendants and the free assistance implicates the Hobbs Act and predicate acts under Federal and Oregon RICO (**The Thirty Seventh Act**).

117. The jury award in case 3:15-cv-2401 was appealed to the 9th Circuit on multiple grounds. 9th Circuit Judge Richard Paez requested assignment to this case. Under Oregon Law (*Livingston* case), a non-signatory may compel arbitration against a signatory plaintiff if the claims are contemplated under the contract. In 2011 Zweizig was awarded damages under ORS 659A.199, .230 and .30(1)(f). Zweizig argued for affirmation of the award.The case was affirmed by the USDCOR, by Judge Papak. In 2015 Zweizig pursued claims under ORS  659A.199, .230 and .30(1)(f) and (g) and against the same parties. Judge Paez refused to bound by Oregon law and compel arbitration. The 9th Circuit is bound by Oregon law on the issue of equitable estoppel, *Beeman v. Anthem Prescription Mgmt., LLC*, 689 F.3d 1002, 1008 (9th Cir. 2012). On information and belief the defendants solicited Judge Paez to refuse to follow Oregon law in favor of Zweizig and the trafficking of children. (**The Thirty Eighth Act**).

PAGE 34.  COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

118. In March 2021, Zweizig filed a Motion for execution of a writ to sale Plaintiff's homestead in Clackamas County Oregon. Plaintiff Rote in objecting to the writ, showed that Zweizig lacked standing to file the writ because the sales price of the home was insufficient to pay the liens superior to Zweizig's. In parallel litigation, Plaintiff Rote successfully discharged the Zweizig liens after three hearing, wherein Zweizig presented no evidence to challenge the value of the sale to an independent third party. The Deschutes County Court nonetheless approved the writ during the covid moratorium.  On information and belief the defendants solicited the Deschutes Court through Chief Judge Wells Ashby, an act of retaliation for naming the defendants in this case and exposing the defendants' support of child pornography. (**The Thirty Ninth Act**).

119. In September 2020, the U.S. Marshals Service harassed and attempted to intimidate Plaintiff Rote and his extended family. Two officers of the U.S. Marshals attempted to interview Plaintiff's Mother-in-Law for Plaintiff investigating Mosman. The U.S. Marshals contacted Tanya Rote and even suggested to her that she should be cautious with Plaintiff. The U.S. Marshals Service contacted Plaintiff and inquired about this lawsuit and plaintiff's blog posts documenting an investigation of Mosman, his history of supporting child pornography and his connection to the PLF. (**The Fortieth Act**).

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. §1983
### Violation of Plaintiff's First Amendment Rights

#### Against All Defendants

120. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 119 as though fully set forth herein.

121. In all claims in this action , plaintiff alleges:

PAGE 35.  COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

a. the plaintiff was engaged in a constitutionally protected activity;

b. the defendant's actions against the plaintiff would chill a person of ordinary firmness from continuing to engage in the protected activity; and

c. the plaintiff's protected activity was a substantial or motivating factor in the defendant's conduct.

122. The Statute provides that every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

123. Under the Oregon Constitution, Article I, Section 8, No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right.

124. Plaintiff Rote exercised his constitutional right to freedom of speech by blogging, tweeting and otherwise publishing about matters of public concern and national debate, among them being the efficacy of arbitration, failures of the judiciary to reign in arbitrators, the right to file a complaint to a body administering judicial conduct without fear of repercussion and persecution, to disclose ex-parte and other forms of misconduct by court staff when found, to publish the results of ongoing litigation and to question the court's adopting a poster child who disseminates child porn. Plaintiff also exercised his constitutional right of petition for redress of

PAGE 36.  COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

the defendants conscious targeting plaintiff for exercising his right of petition including the filing of this case.

125. Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

126. The acts of defendants described herein were taken under color of federal and state law.

127. Zweizig and his attorneys, recognizing the Zweizig had been offered anonymity and redaction and refused that accommodation, petitioned the defendant actors to punish Rote for Rote's critiques of the Court. That solicitation of bias was repeated more than a dozen times including by the PLF and its vendors (an arm of the state judicial department). Defendants embraced those solicitations of bias by and through violations of due process.

128. Defendants' acts violated Rote's rights under the First Amendment of the United States Constitution, made applicable to the State of Oregon through the 14th Amendment.

129. Defendants' acts were designed to punish and discourage the open publication of critiques of the court and court staff, among those cited including but not limited to ex-parte contact between Sandra Ware and Kugler's law clerk, the publishing of a letter therein, placing and allowing the Jones and Kugler transcripts to taint proceedings, judicial endorsed acts of perjury, concealment of perjury that serves the interest of judicial actors, financial malfeasance, the destruction of trial recordings, harassment, intimidation etc.

130. Defendants' constitutional abuses and violations were and are directly caused by policies, practices and/or customs devised, implemented, enforced, encouraged and sanctioned by Defendants.

131. Defendants' acts were also intended to prolong litigation as a direct and proximate form of persecution, to cause financial harm.

PAGE 37.  COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

132. As a direct and proximate result of defendants' unlawful acts, Rote has suffered economic damages and harm to his reputation.

133. As a direct and proximate result of defendants' unlawful acts, Rote has suffered outrage, betrayal, offense, indignity, embarrassment, humiliation, injury and insult in amounts to be determined by the jury at trial.

134. Rote seeks recovery of all other equitable relief and punitive damages as provided by law, in addition to reimbursement of his reasonable attorneys' fees and costs pursuant to 42 USC § 1988 and 28 USC §1927, if appropriate.

135. Defendants' conduct toward Rote demonstrated a wanton, reckless or callous indifference to the constitutional rights of Rote, which warrants an imposition of punitive damages in such amounts as the jury may deem appropriate to deter future violations.

### SECOND CLAIM FOR RELIEF
### 42 U.S.C. §1983
### As Applied Due Process Violations of Plaintiff's Right To An Impartial Tribunal As Guaranteed By The Fourteenth Amendment

### Against All Defendants

136. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 133 as though fully set forth herein.

137. 42 U.S.C. § 1983 and the Due Process Clause of the Fourteenth Amendment, provides that no State shall "deprive any person of life, liberty, or property, without due process of law."

138. Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

139. "It is axiomatic that '[a] fair trial in a fair tribunal is a basic requirement of due process.'" *Caperton v. A.T. Massey Coal Co*., No. 08-22, 2009 U.S. Lexis 4157, at *15 (June 8, 2009) (citing In re Murchison, 329 U.S. 133, 136 (1955)).

PAGE 38.  COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

140. At a minimum, a person who will be deprived of a right is entitled to a fair decision-making process by an impartial decision-maker. Defendants' acts were by intent and design to deprive Rote an impartial decision-maker, the self-evident acts presenting most often as an abuse of judicial discretion.

141. The Jones and Kugler transcripts were filed and encouraged to be filed in the described litigation more than ten times, in six legal actions and in three states with the intent of encouraging if not demanding judicial bias. The judicial actors identified as defendants in this action embraced the persecution of plaintiff without regard to the truth, facts, law or consideration that their acts aided and abetted the dissemination of child pornography and expanded the footprint of child trafficking.

142. Among the abuses by the court include refusal to vacate an arbitration award stemming from the arbitrators acknowledgement of inability to perform the duties demanded, refusal to permit discovery, refusal to allow evidence, refusal to compel arbitration, refusal to recuse (Papak, Hernandez and Portland Division), refusal to sanction, collusion in the misconduct of opposing counsel, aiding and abetting cybercrime, editing and destroying a trial record, all of which was intended to punish the plaintiff for the exercise of his constitutional right to free speech.

143. The acts of defendants when measured against applicable law, res judicata, unrefuted facts, were objectively unreasonable and unsupported, most often presented as a commitment to ignoring proffered evidence.

144. The acts of defendants described herein were taken under color of federal and state law.

145. Defendants' acts violated Rote's rights under the Fourteenth Amendment of the United States Constitution, made applicable to the State of Oregon and Colorado..

PAGE 39.  COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

146. Defendants' constitutional abuses and violations were and are directly caused by policies, practices and/or customs devised, implemented, enforced, encouraged and sanctioned by Defendants including: (a) the failure to adequately and properly train and supervise Federal and State employees; (b) the failure to properly and adequately monitor and discipline Federal and State employees; (c) the overt and tacit encouragement and sanctioning of, and failure to rectify, the practices that led to the Fourteenth Amendment violations here.

147. As a direct and proximate result of defendants' unlawful acts, Rote has suffered economic damages and suffered harm to his reputation.

148. As a direct and proximate result of defendants' unlawful acts, Rote has suffered outrage, betrayal, offense, indignity, embarrassment, humiliation, injury and insult in amounts to be determined by the jury at trial.

149. Rote seeks recovery of all other equitable relief and punitive damages as provided by law, in addition to reimbursement of his reasonable attorneys' fees and costs pursuant to 42 USC § 1988 and 28 USC §1927, if appropriate.

150. Defendants' conduct toward Rote demonstrated a wanton, reckless or callous indifference to the constitutional rights of Rote, which warrants an imposition of punitive damages in such amounts as the jury may deem appropriate to deter future violations.

### THIRD CLAIM FOR RELIEF
### 42 U.S.C. §1985
### Conspiracy to Violate Civil Rights

### Against All Defendants

151.  Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 149 as though fully set forth herein.

PAGE 40.  COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

152. 42 U.S.C.§ 1985 claims arise from: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993).

153. The defendants knowingly and willing punished Rote for his public speech, denied Rote critical elements of due process influencing or deciding the outcome of litigation to which Rote was a party, by defendants objectively unreasonable bases in law and fact nefariously masquerading as judicial deference, with the intent of hurting Rote to whom they also ascribe a separate socio-economic class and as a business owner.

154. Any single act stands out as an abuse of judicial discretion. The sum of the acts presents a prolonged and calculated pattern of persecution among the defendants as conspirators with the intent of causing economic harm to Rote, singling Rote out to punish his speech and to deny him due process.

155. The collusion between actors named as defendants in this case and counsel not named as defendants is best defined by counsel filing the Jones transcript, Kugler Show Cause Order and Kugler transcript some ten times in six actions in three different states, each time a criminal request for the abuse of a public office and each time not sanctioned by the court.

156. Opposing counsel first filed the Jones transcript ex-parte in 2004 in Camden, N.J.; then the Jones and Kugler transcripts in 2005-2006 in N.J State Court; then again in the 2010 arbitration; then the Jones and Kugler transcripts and Crow complaint in 2012 with the confirmation; then the Kugler and Jones Transcript in 2014 (3:14-CV-406); then the Kugler and Jones transcript in the 3:15-CV-2401 case some three times; then in the 2016 defamation case against Christiansen and Marshall, this time filed by opposing counsel hired by and deemed filed

PAGE 41.  COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

by the Oregon State Bar PLF and Carol Bernick; then finally also filed in the Oregon Court of

Appeals resulting in an AWOP. The AWOP was an act of support for the courts civil rights

violations, solicited and secured by James Egan.

157. Officers of the court have through these filings requested and, upon refiling, confirmed

that Rote has and will be denied due process.

158. In state court, Crow, Weishaupl, Herndon, Egan and Steele conspired with Kugler,

Papak, Mosman  and opposing counsel to punish speech about the court, to deny Rote due

process and to deny him an independent triar. Carol Bernick aided and abetted in the

dissemination of the Jones and Kugler transcripts and in the acts violating Rote's free speech and

right to due process. Rote put Bernick on notice about the perjury and acts of PLF counsel and

Bernick endorsed those acts.

159. In Federal court, Papak, Kugler, Mosman, Hernandez, Bernick and Williams aided and

abetted in punishing Rote's speech and denying Rote dues process by actively engaging with

opposing counsel in strategy, motion and advocacy, by effecting the quashing of subpoenas, by

destroying recordings, by assisting in the cover up of inaccurate trial transcripts and through

multiple acts of intimidation and suppression of evidence.

160. The state and federal actors and conspirator defendants implicate their respective

employer agencies and departments given the representation that they were acting under the

color of the law administered by those employers.

161. Those employers failed to act even when Rote called for recusal of one or more of them

when bias appeared probable or imminent. Those employer agencies and departments chose to

not act to protect the civil rights of plaintiff Rote.

PAGE 42.  COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

162. As a direct and proximate result of defendants' unlawful acts, Rote has suffered economic damages and harm to his reputation.

163. As a direct and proximate result of defendants' unlawful acts, Rote has suffered outrage, betrayal, offense, indignity, embarrassment, humiliation, injury and insult in amounts to be determined by the jury at trial.

164. Rote seeks recovery of all other equitable relief and punitive damages as provided by law, in addition to reimbursement of his reasonable attorneys' fees and costs pursuant to 42 USC § 1988 and 28 USC §1927, if appropriate.

165. Defendants' conduct toward Rote demonstrated a wanton, reckless or callous indifference to the constitutional rights of Rote, which warrants an imposition of punitive damages in such amounts as the jury may deem appropriate to deter future violations.

### FOURTH CLAIM FOR RELIEF
### 42 U.S.C. §2201
### Declaratory and Equitable Relief
### Against The Unites States, The State of Oregon, The State of Colorado, Named Branches, Agencies and Department

166. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 164 as though fully set forth herein.

167. As described herein, Rote has established a violation of his First and Fourteenth Amendment Rights and requests a Declaration thereof.

168. Rote hereby requests that the United States, State of Oregon and State of Colorado, and its respective employees and officials take immediate, voluntary steps to adhere to the requirements of the First, Fourth, and Fourteenth Amendment to the United States Constitution by effectuating the following:

PAGE 43.  COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

a)  The United States and States and its officials shall change and/or supplement any written policy, official practice, or training it gives to its employee, to ensure that those engaging in free speech or publishing a complaint are treated fairly and with respect and are not discriminated against or retaliated against because of their protected speech.

b)  To the United States, open an investigation on Hon. Robert Kugler, Hon. Paul Papak, Hon. Hernandez, Hon. Mosman and U.S. Attorney Billy Williams to determine the lengths to which they have engaged in civil rights violations, publish the content of the inquiry and results, sanction, suspend, make recommendation of impeachment to the U.S. House of Representatives and take other steps necessary to preserve the integrity of the litigation process, to preserve the rights of the citizens of the United States.

c)  To the States, open an investigation on Hon. Elizabeth Weishaupl, Hon. James Egan, Hon. Robert Herndon and Hon. Kathie Steel to determine the lengths to which they have engaged in civil rights violations, publish the content of the inquiry and results, sanction, suspend, remove, disbar and take other steps necessary to preserve the integrity of the litigation process and to preserve the rights of the citizens of those States and the United States.

d)  To the State of Oregon, open an investigation on William B. Crow to determine the lengths to which he engaged in civil rights violations, publish the content of the inquiry and results, review the Disciplinary Board action taken while Crow was Chair of that body, amend the Oregon Arbitration Act to impose malpractice liability and coverage on arbitrators in Oregon and take other steps necessary to preserve the

PAGE 44.  COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

integrity of the litigation process and to preserve the rights of the citizens of Oregon and the United States. Plaintiff does wish to acknowledge that Crow has been a willing communicator and does not wish to impugn him, but the system must be improved and malpractice must be available to litigants.

e) To the State of Oregon, open an investigation on the Oregon State Bar Association, the Professional Liability Fund, Carol Bernick, Nena Cook and Amber Hollister to determine the lengths to which they engaged in civil rights violations, publish the content of the inquiry and results, audit the financial records of the PLF to determine if there has been malfeasance in any form (including bribes and influence to the judiciary and/or legislature), sanction, suspend, remove, disbar and to take other steps necessary to preserve the integrity of the litigation process and to preserve the rights of the citizens of Oregon and the United States.

f) To the State of Oregon, to remove the PLF from the umbrella of the Oregon Department of Justice, to convert the PLF to a for-profit corporation subject to federal and state income tax as any other captive insurance company would be, to do so in an orderly manner and to take other steps necessary to preserve the integrity of the litigation process and preserve the rights of the citizens of Oregon and the United States.

g) To the State of Oregon, open an investigation on Oregon attorneys who have filed the Kugler and Jones transcripts, or aided and abetted in the filing of these transcripts, to determine the lengths to which they engaged in civil rights violations, publish the content of the inquiry and results, to sanction, suspend, disbar and take other steps necessary to preserve the integrity of the litigation process and to preserve the rights of the citizens of Oregon and the United.

PAGE 45.  COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

169. Depending upon the response to Rote's requests, described above, and other information that is learned during the course of the litigation, he will seek injunctive relief and ask the federal court to order Defendants United States, State of Oregon and State of Colorado and its employees and officials to make the necessary changes to their policies and official practices, to prevent further egregious violations of the constitutional rights.  To the extent it may be necessary, Rote also will request the federal court to retain continuing jurisdiction and oversight over the operation of the State of Oregon in the respects described above, to ensure that the changes are implemented in a timely and effective manner.

170. Rote also requests an award his attorney fees and litigation expenses/costs against defendants pursuant to 42 USC § 1988.

WHEREFORE, Plaintiff Rote prays for judgment against defendants as follows:

1.   Economic damages in the form of consequential damages and prejudgment interest in an amount to be determined at trial, but not less than $10,000,000 plus three times the damages associated with the RICO violations;

2.   Noneconomic damages in an amount to be determined at trial, but not less than $50,000,000;

3.   All available equitable relief and damages in amounts to be determined at trial, consistent with the claims above against defendants;

4.   Punitive damages consistent with the claims above against defendants in amounts to be determined at trial;

5.   Reasonable attorneys' fees and litigation expenses/costs herein, including expert witness fees and expenses, consistent with the claims above against defendants; and

6.   Grant such other relief as is just and proper.

PAGE 46.  COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

PLAINTIFF HEREBY REQUESTS A JURY TRIAL.


Dated:  August 9, 2021


s/ *Timothy C. Rote*
Timothy C. Rote
*Pro Se* Plaintiff

PAGE 47.  COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

# <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 9, 2021, I filed the foregoing with the Clerk of the Court which will send notification of such filing to the following:

ALL COUNSEL REGISTERED

and I hereby certify that I have also emailed the document to the following participants while my motion for ECF is pending:

Joseph.arellano@foster.com
Nathaniel.Aggrey@doj.state.or.us
paul.cirino@usdoj.gov

and sent by first class mail to:

COLORADO JUDICIAL BRANCH
THE HON. ELIZABETH WEISHAUPL
STATE COURT ADMINISTRATORS OFFICE
1300 BROADWAY N., SUITE 1200
DENVER, COLORADO 80203

s/ Timothy C. Rote
Timothy C. Rote
*Pro Se Plaintiff*
E-Mail: Timothy.Rote@gmail.com

PAGE 1.    CERTIFICATE OF SERVICE

**Bennett-Hunter Carolyn**

| | |
|---|---|
| **From:** | info@ord.uscourts.gov |
| **Sent:** | Thursday, December 30, 2021 7:49 AM |
| **To:** | nobody@ord.uscourts.gov |
| **Subject:** | Activity in Case 3:19-cv-01988-SI Rote v. Committee on Judicial Conduct and Disability of the Judicial Conference of the United States et al Opinion and Order |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

**\*CAUTION EXTERNAL EMAIL\*** This email originated from outside of DOJ. Treat attachments and links with caution. **\*CAUTION EXTERNAL EMAIL\***

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\*** There is no charge for viewing opinions.

**U.S. District Court**

**District of Oregon**

## Notice of Electronic Filing

The following transaction was entered on 12/30/2021 at 7:48 AM PST and filed on 12/30/2021

| | |
|---|---|
| **Case Name:** | Rote v. Committee on Judicial Conduct and Disability of the Judicial Conference of the United States et al |
| **Case Number:** | 3:19-cv-01988-SI |
| **Filer:** | |
| **Document Number:** | 76 |

**Docket Text:**
**Opinion and Order - The Court GRANTS all pending motions to dismiss (ECF [55], ECF [56], and ECF [64]) and dismisses all claims asserted against all Defendants other than the Colorado Judicial Department and Colorado Judge Elizabeth Weishaupl. Signed on 12/30/2021 by Judge Michael H. Simon. (mja)**

**3:19-cv-01988-SI Notice has been electronically mailed to:**

Jared Hager     jared.hager@usdoj.gov, CaseView.ECF@usdoj.gov, samantha.schultz@usdoj.gov

Matthew J. Yium     matthew.yium@foster.com, erika.wedenoja@foster.com

Nathaniel Aggrey     nathaniel.aggrey@doj.state.or.us, Carolyn.Bennett-Hunter@doj.state.or.us, Debbie.Sword@doj.state.or.us

Timothy C. Rote    timothy.rote@gmail.com

**3:19-cv-01988-SI Notice will <u>not</u> be electronically mailed to:**

Paul Cirino
U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
555 Fourth Street, NW
Washington, DC 20530


The following document(s) are associated with this transaction:


**Document description:**Main Document
**Original filename:**Not Available
**Electronic document Stamp:**
[STAMP ordStamp_ID=875559790 [Date=12/30/2021] [FileNumber=7684611-0]
[7c70a9cd80eeacd8965d74314344dcd53151f8277bf3df29f845b1087eea73b0c9b0a
ba532cbe2d977a69407538af5c11bba017970e1a7d25bfc8eb5419666df]]

1.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

|  |  |
|---|---|
| **TIMOTHY C. ROTE,** | Case No. 3:19-cv-1988-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **COMMITTEE ON JUDICIAL CONDUCT AND DISABILITY OF THE JUDICIAL CONFERENCE OF THE UNITED STATES, UNITED STATES JUDICIAL DEPARMENT OF JUSTICE, OREGON STATE BAR and PROFESSIONAL LIABILITY FUND, OREGON JUDICIAL DEPARTMENT, COLORADO JUDICIAL DEPARTMENT, THE HON. ROBERT KUGLER, THE HON. MICHAEL MOSMAN, THE HON. MARCO HERNÁNDEZ, THE HON. PAUL PAPAK, THE HON. ELIZABETH WEISHAUPL, THE HON. ROBERT HERNDON, THE HON. JAMES EGAN, THE HON. KATHIE STEELE, BILLY WILLIAMS, CAROL BERNICK, NANCY WALKER, and JOHN DOES 1-5,** | |
| Defendants. | |

Timothy C. Rote, *pro se*.

Scott Erik Asphaug, Acting United States Attorney, and Jared D. Hager, Assistant United States Attorney, U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF OREGON, 1000 SW Third Avenue, Suite 600, Portland, OR 97204. Of Attorneys for the Committee on Judicial Conduct and

Disability of the Judicial Conference of the United States, United States Department of Justice, Hon. Robert Kugler, Hon. Paul Papak, Hon. Marco Hernández, Hon. Michael Mosman, Nancy Walker, and Billy Williams.

Ellen F. Rosenblum, Attorney General, and Nathaniel Aggrey, Assistant Attorney General, OREGON DEPARTMENT OF JUSTICE, 1162 Court Street NE, Salem, OR 97301. Of Attorneys for Defendants Oregon Judicial Department, Hon. Robert Herndon, Hon. James Egan, and Hon. Kathie F. Steele.

Joseph Arellano and Matthew J. Yium, FOSTER GARVEY PC, 121 SW Morrison Street, Portland, OR 97204. Of Attorneys for Defendants Professional Liability Fund, Carol Bernick, and Oregon State Bar.

**Michael H. Simon, District Judge.**

Plaintiff Timothy Rote, representing himself, brings this lawsuit against several state and federal judges, several state and federal agencies, a court reporter, and others. Plaintiff alleges that Defendants have engaged in a conspiracy to retaliate against him and deprive him of his constitutional and civil rights. Plaintiff's claims arise from events relating to a series of lawsuits spanning more than 20 years. Plaintiff alleges that many of the individual defendants used their positions of authority to carry out personal vendettas against him.

Now before the Court are three motions to dismiss filed by three sets of Defendants: (1) the Oregon Judicial Department, Judge Robert Herndon, Judge James Egan, and Judge Kathie Steele (collectively, the State Defendants); (2) the Professional Liability Fund (PLF), Carol Bernick (the previous executive director of the PLF), and the Oregon State Bar; and (3) the Committee on Judicial Conduct and Disability of the Judicial Conference of the United States (the Federal Judicial Conduct Committee), the United States Department of Justice, U.S. District Judge Robert Kugler, U.S. Magistrate Judge Paul Papak, Chief U.S. District Judge Marco A. Hernández, U.S. District Judge Michael W. Mosman, former U.S. Attorney Billy Williams, and

retired court reporter Nancy Walker (collectively, the Federal Defendants).[1] At oral argument, Plaintiff stated that he did not object to the dismissal of the following four Defendants: the Oregon State Bar, the Federal Judicial Conduct Committee, the U.S. Department of Justice, and Billy Williams. Accordingly, the Court dismisses these four Defendants. For the reasons stated below, the Court grants all pending motions to dismiss and dismisses all claims asserted against all remaining Defendants other than the two Colorado Defendants.

## STANDARDS

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction. *Gunn v. Minton*, 568 U.S. 251, 256 (2013). Thus, a court is to presume "that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *see also Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). An objection that a particular court lacks subject matter jurisdiction may be raised by any party or by the court on its own initiative at any time. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); Fed. R. Civ. P. 12(b)(1). The Court must dismiss any case over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *see also Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th

---

[1] Two additional Defendants, the Colorado Judicial Department and Colorado Judge Elizabeth Weishaupl (collectively, the Colorado Defendants), have not yet filed an answer or other responsive pleading in this action. At oral argument, Plaintiff stated that he intends to move for default against the Colorado Defendants. Accordingly, this Opinion and Order does not resolve any claim asserted against the two Colorado Defendants.

Cir. 2015) (noting that when a court lacks subject-matter jurisdiction, meaning it lacks the statutory or constitutional power to adjudicate a case, the court must dismiss the complaint, even sua sponte if necessary).

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may be either "facial" or "factual." *See Safe Air for Everyone*, 373 F.3d at 1039. A facial attack on subject matter jurisdiction is based on the assertion that the allegations in the complaint are insufficient to invoke federal jurisdiction. *Id.* "A jurisdictional challenge is factual where 'the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.'" *Pride v. Correa*, 719 F.3d 1130, 1133 n.6 (9th Cir. 2013) (quoting *Safe Air for Everyone*, 373 F.3d at 1039)). When a defendant factually challenges the plaintiff's assertion of jurisdiction, a court does not presume the truthfulness of the plaintiff's allegations and may consider evidence extrinsic to the complaint. *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012); *Robinson*, 586 F.3d at 685; *Safe Air for Everyone*, 373 F.3d at 1039. A factual challenge "can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency." *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996) (citation and quotation marks omitted).

## B.  Motion to Dismiss for Failure to State a Claim

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629

F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epstein Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

A court must liberally construe the filings of a self-represented, or *pro se*, plaintiff and afford the plaintiff the benefit of any reasonable doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Further, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 923 n.4 (9th Cir. 2011) (quotation marks omitted). "Unless it is absolutely clear that no amendment can cure the defect, . . . a *pro se* litigant is entitled to notice

of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Garity v. APWU Nat'l Lab. Org.*, 828 F.3d 848, 854 (9th Cir. 2016) (alteration in original) (quoting *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, however, every complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This standard "does not require 'detailed factual allegations'" but does demand "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## BACKGROUND

Plaintiff's allegations arise from a series of lawsuits spanning more than 20 years in state and federal court. Because Plaintiff's claims in this action arise from Defendants' alleged conduct throughout this history of litigation, the Court recounts Plaintiff's allegations about each lawsuit. Plaintiff has included as defendants in these various lawsuits, including in this action, the judges, attorneys, and court staff who have ruled against him or have otherwise taken actions that Plaintiff challenges. Plaintiff alleges in this action that his current list of defendants here retaliated against his exercise of free speech and conspired against him to deprive him of procedural due process. At the request of the parties, the Court takes judicial notice of the dockets and court filings in the following cases involving Plaintiff: *Jones v. North West Telemarketing Inc.*, Case No. 99-cv-990-JO (D. Or.); *Zweizig v. Rote*, Civ. No. 04-2025(RBK) (D. N.J.); *Northwest Direct Teleservices, Inc. v. Zweizig*, Case No. 3:11-cv-910-PK (D. Or.); *Zweizig v. Northwest Direct Teleservice, Inc.*, Case No. 3:15-cv-2401-HZ (D. Or.); *Rote v. Marshall*, Clackamas County Case No. 16CV07564; *Rote v. Brandsness*, Clackamas County

Case No. 18CV45257; and *Rote v. Marshall*, Case No. 3:19-cv-82-MO (D. Or.). *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (stating that courts "may take judicial notice of court filings and other matters of public record"). The Court recites the following facts as alleged in Plaintiff's Second Amended Complaint and the additional facts of which the Court has taken judicial notice. Solely for purposes of the pending motions to dismiss, the Court accepts as true all well-pleaded facts stated in the Second Amended Complaint.

**A.  Judge Jones Lawsuit**

In 1999, a former employee of one of Plaintiff's companies, Northwest Direct Teleservices, Inc. (Northwest Direct), sued that company in Oregon federal court. U.S. District Judge Robert E. Jones presided over that case. Shortly after the jury awarded damages to the plaintiff in that lawsuit, according to Plaintiff here, the plaintiff in the earlier lawsuit, who also shared the last name "Jones," stated that he was related to Judge Jones. Plaintiff here then sent a letter to Judge Jones asking him to recuse himself. Judge Jones held a hearing on that request for recusal, and during the hearing, Judge Jones expressed his concern with Mr. Rote's letter. Judge Jones stated: "I don't want anything to do with this case. I have utter contempt for this person. He wrote the court a very personal, very nasty letter. A hypocrite. So, get out of here. I am not going to have anything to do with this. I will recuse myself." ECF 57-7, at 4. In this action, Plaintiff refers to the transcript from that hearing as the "Jones Transcript." Plaintiff alleges that several of the Defendants here filed the Jones Transcript in later lawsuits to retaliate against Plaintiff for seeking recusal of Judge Jones.

**B. 2003 Employment Lawsuits and Arbitration**

    **1. Judge Kugler Litigation**

The genesis of Plaintiff's current dispute with Defendants here begins with the circumstances of Max Zweizig's termination of employment from Plaintiff's business, Northwest Direct. Plaintiff alleges that Zweizig tried to extort him by destroying Northwest Direct's critical programming code and demanding a raise in exchange for restoring the company's software system. Plaintiff then fired Zweizig. At some point near the end or shortly after Zweizig's termination of employment, Zweizig returned a hard drive to Northwest Direct. Plaintiff then hired an investigator to conduct a forensic report of the contents of that hard drive. The investigator allegedly discovered that the hard drive contained child pornography. Plaintiff has attempted to introduce that report in nearly all subsequent litigation involving Zweizig and alleges in this action that because the judges presiding over those various lawsuits have either excluded that evidence or otherwise ruled against Plaintiff, those judges are engaged in a conspiracy to facilitate child trafficking and disseminate child pornography.

After Plaintiff fired Zweizig, Zweizig sued Northwest Direct in New Jersey state court, alleging that Plaintiff fired him in retaliation for Zweizig's accusation that Northwest Direct overbilled its clients. Northwest Direct removed the case to federal court in New Jersey, with U.S. District Judge Robert Kugler presiding. Plaintiff alleges that during that litigation Zweizig's girlfriend, Sandra Ware, met with one of Judge Kugler's law clerks, who allegedly was a law school classmate with Ware. Plaintiff further alleges that during that meeting, Ware gave the law clerk a copy of the Jones Transcript. Shortly thereafter, Judge Kugler remanded the case back to New Jersey state court. Plaintiff alleges that Judge Kugler's decision to remand is a "self-evident act of prejudice" and an attempt to deny Plaintiff due process.

At some point thereafter, Plaintiff sent a letter to Judge Kugler, enclosing a copy of the forensic report of Zweizig's hard drive. Plaintiff also included in his letter an accusation that Judge Kugler's law clerk had improperly met with Ware to receive from Ware a copy of the Jones Transcript. Judge Kugler issued an order to show cause why Plaintiff should not be held in criminal contempt for sending that letter. Plaintiff then filed a judicial ethics complaint against Judge Kugler. Plaintiff refers to the transcript from the hearing before Judge Kugler to determine whether Plaintiff should be held in contempt as the "Kugler Transcript." After that hearing, Judge Kugler allegedly called Plaintiff into chambers and asked him to withdraw his judicial ethics complaint against Judge Kugler. Plaintiff also alleges, albeit on information and belief, that the Federal Judicial Conduct Committee "endorses" retaliation by federal judges against litigants who file ethics complaints.

### 2. Crow Arbitration

On remand, the New Jersey state court transferred the case to arbitration in Portland, Oregon. The parties began arbitration in 2006 with Portland attorney William Crow (since deceased) serving as the arbitrator. Plaintiff alleges that Zweizig's Oregon attorney, Linda Marshall, sent Crow copies of the Jones and Kugler Transcripts. Plaintiff also alleges that Zweizig filed copies of the Jones and Kugler Transcripts in New Jersey state court before the parties were ordered to arbitrate.

While arbitration was pending, Plaintiff learned that Crow and Marshall had previously been law partners for 14 years. When Plaintiff expressed concern over that prior professional relationship, Crow notified the Arbitration Services of Portland, which then undertook the decision of whether Crow should remain serving as the arbitrator. The Arbitration Services of Portland ultimately decided that Crow should remain the arbitrator. The following year, Zweizig prevailed in that arbitration. Plaintiff alleges, also on information and belief, that Judge Kugler

and U.S. District Judge Mosman "solicited" that result from Crow. Plaintiff then filed a professional ethics complaint against Marshall for allegedly advising Zweizig to destroy evidence, aiding and abetting perjury, and lying to arbitrator Crow. Plaintiff also filed an professional ethics complaint against Crow, who at the time was the Chair of the Oregon State Bar's Disciplinary Board.

### 3.  Judge Papak Litigation

Plaintiff filed a motion to vacate the arbitration award in Oregon federal court, with U.S Magistrate Judge Paul Papak presiding. Plaintiff alleged that Crow and Marshall's prior professional relationship improperly influenced Crow's award to Zweizig. Judge Papak, however, confirmed the arbitration award. Plaintiff alleges that Judge Papak's refusal to vacate the arbitration award is "self-evident" of his prejudice against Plaintiff and Judge Papak's intent to deny Plaintiff due process. Plaintiff states that he later met with Crow in February 2017, during which time Crow allegedly "admitted" that he did not have the stamina to look at all the evidence during the arbitration and had used a draft opinion written by Marshall. After Crow's death in 2020, Plaintiff dismissed his claims against Crow in this lawsuit.

### C.  Judge Hernández Lawsuit

After the conclusion of the arbitration before Crow and the affirmance of the arbitration award in federal court by Judge Papak, Plaintiff created an online blog and began writing posts about the arbitration. Zweizig then sued Plaintiff in Oregon federal court in 2015, alleging retaliation and employment discrimination. In that lawsuit, Zweizig alleged that Plaintiff posted to his blog to retaliate against Zweizig prevailing in arbitration. U.S District Judge Marco Hernández presided over that lawsuit, and attorneys Joel Christiansen and Linda Marshall represented Zweizig. Plaintiff alleges that Zweizig filed copies of the Jones and Kugler Transcripts to "bias" Judge Hernández. Plaintiff then filed his own motion to compel arbitration,

which Judge Hernández denied. Plaintiff also asserted counterclaims against Zweizig and his attorneys, alleging defamation and malicious prosecution, among other things. Judge Hernández granted Zweizig and his attorneys' anti-SLAPP motion to strike Plaintiff's counterclaims.

Zweizig's claims against Plaintiff proceeded to trial. Before trial, Judge Hernández granted Zweizig's motion *in limine* to exclude Plaintiff's forensic report of Zweizig's hard drive. Judge Hernández also excluded other exhibits that Plaintiff had sought to introduce. Plaintiff alleges that Judge Hernández "intentionally made [an] objectively unreasonable ruling to punish Plaintiff for his free speech and to deny his right of due process," asserting that Judge Hernández only received in evidence five of the 60 exhibits that Plaintiff had offered in evidence. ECF 51, ¶ 92.

Plaintiff also alleges that the court reporter in that trial, Nancy Walker, "intentionally falsified" the trial transcript by omitting two statements that Christiansen allegedly made during his closing argument. Christiansen allegedly stated that Plaintiff had made $4 million per year and that the jury should consider that income in awarding damages. Plaintiff asked Walker to check to see if she made any errors in her transcript, and Walker responded that she had made no errors.

At the close of the trial in 2018, the jury awarded Zweizig $1 million in damages. Judge Hernández applied a damages cap under Oregon law, reducing the judgment to $500,000. Both parties appealed. On appeal, the Ninth Circuit affirmed Judge Hernández's pretrial rulings but certified to the Oregon Supreme Court the question of whether the statutory damages cap applied in these circumstances. The Oregon Supreme Court answered that the cap did not apply, and the Ninth Circuit remanded the case to Judge Hernández, who then amended the judgment to reflect the $1 million jury verdict. Plaintiff alleges, on information and belief, that Defendants

"solicited" Ninth Circuit Judge Paez, one of the judges on the panel, to refuse to follow Oregon

law in ruling against Plaintiff to "facilitate the trafficking of children."

     In March 2021, Zweizig moved for a writ as part of his execution of judgment. Zweizig

asked for a writ that would allow him to sell Plaintiff's home in Oregon. Deschutes County

Circuit Court Judge Wells Ashby granted the writ. Plaintiff alleges, on information and belief,

that Defendants "solicited" Judge Ashby to grant the writ in retaliation for Plaintiff's filing the

pending lawsuit.

**D. Judge Herndon Lawsuit**

     After Judge Hernández dismissed Plaintiff's counterclaims, Plaintiff sued the Oregon

State Bar, Christiansen, and Marshall in Clackamas County Circuit Court, alleging conspiracy,

racketeering, defamation, and intentional infliction of emotional distress, among other claims.

Judge Robert Herndon presided over that lawsuit. Plaintiff alleged that the Oregon State Bar

failed to investigate properly Plaintiff's ethics complaints against Christiansen and Marshall.

Plaintiff also alleged that the Oregon State Bar, Christiansen, and Marshall conspired to retaliate

against Plaintiff for his blog posts critical of the judiciary. The Professional Liability Fund hired

counsel to represent Christiansen and Marshall.

     The defendants in that action filed anti-SLAPP motions, and Plaintiff alleges that during

the anti-SLAPP litigation, Christiansen, Marshall, and their attorneys made false statements to

the U.S. Marshal Service that Plaintiff posed a threat to Judge Jones. According to Plaintiff, the

U.S. Marshal Service then placed Plaintiff on their watch list. Plaintiff also alleges that counsel

for Christiansen and Marshall filed copies of the Jones and Kugler Transcripts to "bias" Judge

Herndon, who then granted the defendants' anti-SLAPP motions.

     Plaintiff then filed ethics complaints against Christiansen and Marshall. In the pending

lawsuit, Plaintiff alleges that Christiansen committed perjury in his declaration filed in support of

his anti-SLAPP motion. The Oregon State Bar took no disciplinary action against Christiansen or Marshall. Plaintiff also alleges here that the Oregon State Bar aided and abetted Christiansen and Marshall's efforts to deny Mr. Rote's right to due process. After filing his bar complaints, Plaintiff filed a motion to set aside the judgment dismissing his claims, contending that Christiansen and Marshall had committed fraud on the court. Judge Herndon denied that motion.

In the pending lawsuit, Plaintiff alleges, on information and belief, that Judge Papak contacted Judge Herndon to request that he deny Plaintiff due process. Plaintiff then appealed the dismissal of his claims to the Oregon Court of Appeals. Judge James Egan, a judge on the Oregon Court of Appeals, had allegedly previously served as counsel for Zweizig. Plaintiff requested that Judge Egan "not get involved with the appeal." ECF 51, ¶ 89. Plaintiff alleges that the appellate court ignored his request. The Oregon Court of Appeals affirmed Judge Herndon's dismissal. Plaintiff alleges, on information and belief, that Judge Egan solicited other members of the Oregon Court of Appeals to affirm the dismissal without an opinion and deny Plaintiff due process.

Plaintiff later renewed his motion to set aside the judgment. Judge Susie Norby denied the motion. Plaintiff alleges, on information and belief, that Judge Norby was seeking appointment to the Oregon Court of Appeals and met with Judge Egan before ruling on the motion and that she denied Plaintiff's motion to show her solidarity with Judge Egan.

**E.  Judge Mosman Lawsuit**

After the Oregon Court of Appeals affirmed Judge Herndon's dismissal of Plaintiff's claims, Plaintiff filed a new lawsuit in Clackamas County Circuit Court in 2018 against Marshall, Christiansen, the PLF, Carol Bernick, and Nancy Walker. Plaintiff asserted, among other claims, a state law racketeering claim against all defendants; defamation and intentional infliction of emotional distress claims against Marshall and Christiansen for allegedly making

PAGE 13 – OPINION AND ORDER

false statements to Judge Jones's deputy clerk; a malpractice claim against his own prior attorney for failing to file a motion to compel arbitration before filing an answer; a breach of contract claim against the PLF for refusing to cover Plaintiff's malpractice claim; and a fraud claim against Nancy Walker for allegedly falsifying the transcript of the trial in the Judge Hernández Lawsuit. The United States substituted itself as a defendant in place of Walker and then removed the case to Oregon federal court. Judge Mosman presided over that action, granted the United States' motion to dismiss, and entered partial judgment dismissing the United States from the lawsuit. Judge Mosman later granted the remaining defendants' motion to dismiss. Plaintiff alleges, on information and belief, that Judge Kugler "solicited" Judge Mosman's dismissal because they both had served as judges on the Foreign Intelligence Surveillance Court.

Plaintiff appealed, and the Ninth Circuit reversed and remanded. The Ninth Circuit explained that after dismissing the only federal defendant, the court lacked subject matter jurisdiction over the remaining state law claims. On remand, Judge Mosman sent the case back to Clackamas County Circuit Court.

## F. Present Action

In May 2019, Plaintiff filed his complaint in this action. Plaintiff named as defendants nearly every federal and state court judge that played a part in adjudicating his prior lawsuits, as well as former U.S. Attorney Billy Williams, court reporter Nancy Walker, former executive director of the PLF Carol Bernick, the Federal Judicial Conduct Committee, the U.S. Department of Justice, the Oregon Judicial Department, the Oregon State Bar, the PLF, and the two Colorado Defendants. Here, Plaintiff asserts the following: (1) a claim under 42 U.S.C. § 1983 against all Defendants for violating Plaintiff's First Amendment rights; (2) a claim under § 1983 against all Defendants for violating Plaintiff's right to procedural due process; (3) a claim under § 1985 against all Defendants for conspiracy to violate Plaintiff's civil rights; and (4) a claim for

PAGE 14 – OPINION AND ORDER

declaratory and injunctive relief against the state and federal agency Defendants requiring that they restructure the PLF, supplement training and policies to ensure the protection of free speech, and open investigations into the individual Defendants, other individuals associated with the Plaintiff's litigation history, the Oregon State Bar, and the PLF.

Plaintiff originally filed his complaint in the District Court for the District of Columbia, which transferred the action to the U.S. District Court for the District of Oregon, with Judge Mosman presiding. After dismissing Plaintiff's complaint in the case that had been removed from Clackamas County Circuit Court but before the Ninth Circuit reversed, Judge Mosman *sua sponte* dismissed Plaintiff's claims in this lawsuit under the doctrine of claim preclusion, formerly known as "res judicata." Plaintiff appealed that dismissal, and the Ninth Circuit reversed. The Ninth Circuit explained that because it had vacated the judgment dismissing Plaintiff's claims in the removed Clackamas County case, that judgment could not provide preclusive effect in this action.

On remand, Judge Mosman recused himself based on threats and other concerning conduct directed at Judge Mosman and his family. After the case was reassigned to the undersigned, the Court granted Plaintiff's motion for leave to file a second amended complaint, which added several defendants, including Judge Mosman. Now before the Court are three motions to dismiss, filed by the following sets of Defendants: (1) the Federal Judicial Conduct Committee, U.S. Department of Justice, U.S. District Judge Kugler, U.S. Magistrate Judge Papak, U.S. District Judge Hernández, U.S. District Judge Mosman, retired court reporter Nancy Walker, and former U.S. Attorney Billy Williams; (2) the Oregon Judicial Department, state court Judge Robert Herndon, state court appellate Judge James Egan, and state court Judge

Kathie Steele; and (3) the PLF, former executive director of the PLF Carol Bernick, and the

Oregon State Bar.

## DISCUSSION

### A.  State Defendants' Motion to Dismiss

#### 1.  Oregon Judicial Department

"Generally, States are immune from suit under the terms of the Eleventh Amendment and

sovereign immunity." *Whole Women's Health v. Jackson*, --- S. Ct. ---, 2021 WL 5855551, at *5

(2021). Specifically, under the Eleventh Amendment, states are protected from suit in federal

court. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1040 (9th Cir. 2003). That

immunity extends to state agencies and "arms of the state." *Regents of the Univ. of Cal. v.

Doe*, 519 U.S. 425, 429-30 (1997). There are two exceptions to the Eleventh Amendment's

jurisdictional bar: (1) Congress can abrogate the Eleventh Amendment without the consent of the

states in certain situations; and (2) a state may waive its immunity by consenting to suit in

federal court but must do so by "the most express language or by such overwhelming implication

from the text as [will] leave no room for any other reasonable construction." *Micomonaco v.

State of Washington*, 45 F.3d 316, 319 (9th Cir. 1995) (alteration in original) (quoting

*Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 239-40 (1985)).

The Oregon Judicial Department is the "predominant administrative agency" within

Oregon's judicial branch and therefore protected by Eleventh Amendment immunity. *See Sharer

v. Oregon*, 581 F.3d 1176, 1179 (9th Cir. 2009) (stating that the Oregon Judicial Department is

an administrative agency within Oregon's judicial branch); *Hsieh v. Or. Jud. Dep't Dist. 4

Multnomah Cnty.*, 2021 WL 5263192, at *3 (D. Or. Nov. 10, 2021) (stating that the Oregon

Judicial Department is equivalent to the State of Oregon); *Hershey v. McMahon*, 2020

WL 913087, at *4 (D. Or. Jan. 14, 2020) (stating that the Eleventh Amendment barred the

plaintiff's suit against the Klamath County Circuit Court because it was a "part of the Oregon Judicial Department, which is part of the State of Oregon"); *Thomas v. Oregon*, 2010 WL 3528723, at *1 (D. Or. Sept. 8, 2010) (dismissing the plaintiff's claims against the Oregon Judicial Department because it was immune from suit). The Court therefore lacks subject matter jurisdiction over Plaintiff's claims against the Oregon Judicial Department unless Congress has abrogated state sovereign immunity or the State of Oregon has waived its immunity with respect to these claims.

Neither exception applies here. First, Congress has not abrogated state sovereign immunity with respect to Plaintiff's claims. Congress did not abrogate state sovereign immunity when it enacted §§ 1983 and 1985. *Milstein v. Cooley*, 257 F.3d 1004, 1007 (9th Cir. 2001) ("[T]he Supreme Court has attributed to the Congress that passed § 1983 knowledge of then-existing common-law immunities, and the lack of an explicit abrogation of these immunities has been interpreted as preserving them."); *Price v. Shorty*, 632 F. App'x 211, 212 (5th Cir. 2016) (stating that § 1985 does not abrogate state sovereign immunity); *Barclay v. Or. Dep't of J.*, 2019 WL 3806043, at *2 (D. Or. Aug. 13, 2019) (stating that § 1985 does not abrogate state sovereign immunity). Although the Eleventh Amendment does not bar suits for prospective injunctive relief against state officials under the Declaratory Judgment Act, *see Austin v. State Indus. Ins. Sys.*, 939 F.2d 676, 680 n.2 (9th Cir. 1991), the Act does not abrogate Eleventh Amendment immunity against a state or its agencies. *See Kleidman v. Willhite*, 2020 WL 5823278, at *12 (C.D. Cal. Aug. 20, 2020) (stating that the Eleventh Amendment barred the plaintiff's claim under the Declaratory Judgment Act against California courts); *Wielgos v. Idaho Bd. of Land Comm'rs*, 2016 WL 3640609, at *4 (D. Idaho June 29, 2016) (concluding that the Declaratory Judgment Act did not abrogate the state agency defendant's Eleventh Amendment immunity);

*Emberg v. U. of Maryland U. Coll. Asian Div.*, 3 F. Supp. 2d 1127, 1131 (D. Haw. 1998) ("The Declaratory Judgment Act is a procedural statute, and therefore has no language regarding abrogation of a state's Eleventh Amendment immunity.").

Second, the State of Oregon has not consented to suit in federal court by removal or express waiver. *See Todd v. Oregon*, 2014 WL 1217964, at *4 (D. Or. Mar. 19, 2014) ("[T]he State of Oregon did not remove this action to federal court, nor does it appear that the State of Oregon has waived its sovereign immunity from suit in federal court for civil rights actions."). The Court therefore lacks subject matter jurisdiction over Plaintiff's claims against the Oregon Judicial Department. Thus, the Court dismisses all of Plaintiff's claims against the Oregon Judicial Department without prejudice, but without leave to amend in this Court. *See Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) ("In general, dismissal for lack of subject matter jurisdiction is without prejudice."); *Freeman v. Oakland Unified Sch. Dist.*, 179 F.3d 846, 847 (9th Cir. 1999) (order) ("Dismissals for lack of jurisdiction should be without prejudice so that a plaintiff may reassert his claims in a competent court." (simplified)).

## 2. State Judges

### a. Judicial Immunity

Judges are absolutely immune from liability for damages, declaratory relief, and generally for injunctive relief sought as a result of judicial acts performed in their judicial capacity. *Moore v. Brewster*, 96 F.3d 1240, 1243-44 (9th Cir. 1996), *superseded by statute on other grounds*; *Mullis v. U.S. Bankr. Ct. for Dist. of Nev.*, 828 F.2d 1385, 1388 (9th Cir. 1987); *see also Craig v. Villicana*, 676 F. App'x 716 (9th Cir. 2017). To qualify for judicial immunity, a judge must have performed "judicial acts" within the scope of his or her jurisdiction. *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978). "An act is judicial in nature if it is a function normally performed by a judge and the parties to the act were dealing with the judge in his judicial

PAGE 18 – OPINION AND ORDER

capacity." *McGuire v. Clackamas Cnty. Counsel*, 2009 WL 4456310, at *4 (D. Or.

Nov. 24, 2009) (citing *Stump*, 435 U.S. at 362). Judges have "absolute immunity even when their

actions are erroneous, malicious, or in excess of judicial authority." *Tanner v. Heise*, 879

F.2d 572, 576 (9th Cir. 1989).

Further, allegations that judicial decisions were "conditioned upon a conspiracy or

bribery," including allegations that a judge entered into a conspiracy "to predetermine the

outcome of a judicial proceeding, while clearly improper, nevertheless does not pierce the

immunity extended to judges." *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986) (en

banc). Judicial immunity applies so long as "the judge's ultimate acts are judicial actions taken

within the court's subject matter jurisdiction." *Id.*; *see also McCarthy v. Mayo*, 827

F.2d 1310, 1314-15 (9th Cir. 1987) (holding that allegations of conspiracy do not remove quasi-

judicial immunity); *Khazali v. Berns*, 2016 WL 4479915, at *2 (W.D. Wash. Aug. 24, 2016)

("Judicial immunity applies even if there are allegations that a judicial decision resulted from a

bribe or a conspiracy."); *Gozzi v. County of Monterey*, 2014 WL 6988632, at *7 (N.D. Cal.

Dec. 10, 2014) ("Moreover, even if the Judicial Defendants had acted corruptly and received

bribes, as Plaintiff appears to allege, they would still be immune from Plaintiff's § 1983 claim.").

Plaintiff brings his §§ 1983 and 1985 claims against state Judges Herndon, Egan, and

Steele for their alleged solicitation of rulings unfavorable to Plaintiff from other judges. Plaintiff

conceded in his briefing on Defendants' motions to dismiss that judicial immunity applies to a

judge's judicial acts, such as ruling on motions and presiding over trials. Plaintiff contends,

however, that judicial immunity does not protect these judges' "solicitation" of adverse rulings

from *other* judges. For purposes of the pending motions to dismiss, the Court will assume

without deciding that solicitation of adverse rulings from other judges is a nonjudicial act that is not protected by judicial immunity.

### i.  Judge Herndon

Plaintiff alleges that Judge Herndon had a "*quid pro quo*" arrangement with the PLF at the time he granted the anti-SLAPP motion dismissing Plaintiff's claims against Marshall, Christiansen, and the OSB in Clackamas County Circuit Court. ECF 51, ¶ 17. Plaintiff also alleges that Judge Herndon: (a) admitted that the Jones and Kugler Transcripts influenced his decision to grant the anti-SLAPP motion, (b) refused to consider Plaintiff's new evidence while his order of dismissal was on appeal, (c) later denied Plaintiff's motion to set aside the judgment, and (d) engaged in a conspiracy with federal Judges Kugler, Papak, and Mosman to retaliate against Plaintiff's critiques of courts and deny him due process. ECF 51, ¶¶ 85, 88, 158. These acts, even considering Plaintiff's allegations of conspiracy and bribery, are judicial in nature for which Judge Herndon has absolute judicial immunity. *See Ashelman*, 793 F.2d at 1078 (reviewing the Ninth Circuit's line of cases regarding judicial immunity and concluding that allegations of conspiracy or bribery, including a conspiracy to predetermine the outcome of a case, do not foreclose judicial immunity). The Court therefore dismisses Plaintiff's claims against Judge Herndon with prejudice, concluding that any further amendment would be futile.

### ii.  Judge Egan

Plaintiff alleges that Judge Egan, a judge on the Oregon Court of Appeals, solicited other judges on the Oregon Court of Appeals to affirm Judge Herndon's dismissal of Plaintiff's claims without an opinion and without considering his new evidence. ECF 51, ¶¶ 18, 90, 156. Plaintiff alleges that Judge Egan is seeking appointment as a federal magistrate judge and was part of a broader conspiracy with other state and federal judges to retaliate against Plaintiff by denying him due process. ECF 51, ¶¶ 90, 158. Even if Judge Egan had wanted or sought appointment as a

federal magistrate judge, the Court concludes that, based on the allegations presented, it is not

plausible that Judge Egan would have improperly solicited the Oregon Court of Appeals'

decision in retaliation against Plaintiff. This allegation is therefore not entitled to a presumption

of truth because Plaintiff has not alleged sufficient underlying facts in support. *See Starr*, 652

F.3d at 1216 ("[T]o be entitled to the presumption of truth, allegations in a complaint or

counterclaim may not simply recite the elements of a cause of action but must contain sufficient

allegations of underlying facts to give fair notice and to enable the opposing party to defend itself

effectively.").

Plaintiff also alleges that Judge Egan asked Judge Norby, a state trial judge with the

Clackamas County Circuit Court, to deny Plaintiff's renewed motion to set aside the judgment in

the Judge Herndon Lawsuit. ECF 51, ¶ 95. Plaintiff argues that this conduct by Judge Egan is not

subject to judicial immunity because it does not involve a judicial act by Judge Egan, who was

not adjudicating a case involving Plaintiff.

Plaintiff alleges, on information and belief, that Judge Norby is seeking appointment to

the Oregon Court of Appeals and so denied Plaintiff's motion at Judge Egan's request as an "act

of solidarity" with Judge Egan. ECF 51, ¶ 95. As with Plaintiff's allegations about Judge Egan's

alleged pursuit of a federal magistrate position, even if Judge Norby had wanted or sought

appointment to the Oregon Court of Appeals, Plaintiff's allegations that either Judge Egan or

Judge Norby would act improperly, without further allegations, are not plausible. Thus,

Plaintiff's conclusory allegation that Judge Egan solicited Judge Norby's denial of Plaintiff's

motion in retaliation against him is not well-pleaded. *See Starr*, 652 F.3d at 1216; *see also Fields*

*v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1208-09 (9th Cir. 2005) (rejecting the plaintiffs'

allegation made "on information and belief" and stating: "the allegation is entirely speculative and conclusory in nature. No facts are offered in support of the [plaintiffs'] theory").

Accordingly, Plaintiff has not alleged sufficient facts to show that Judge Egan engaged in the nonjudicial act of improperly speaking with a judge in another court to solicit a particular ruling adverse to Plaintiff. The Court therefore dismisses Plaintiff's claims against Judge Egan arising from any alleged nonjudicial acts without prejudice. If Plaintiff believes that he can allege sufficient facts to show with plausibility that his claims against Judge Egan are not subject to judicial immunity, he may file a motion to amend under Rule 15 that complies with Local Rule 15-1.

### iii. Judge Steele

Plaintiff alleges that Judge Steele denied Plaintiff's motion for default judgment against Zweizig, refused to reopen a protective order under seal, approved of her staff's refusal to allow Plaintiff to file documents in several cases, and conspired with federal Judges Kugler, Papak, and Mosman to retaliate against Plaintiff by denying him due process. ECF 51, ¶¶ 23, 107, 109, 158. These acts, even considering Plaintiff's allegations of conspiracy, are all judicial in nature for which Judge Steele has absolute judicial immunity. *See Ashelman*, 793 F.2d at 1078. The Court therefore dismisses Plaintiff's claims against Judge Steele arising from these judicial acts with prejudice.

Plaintiff also alleges that Judge Steele requested legal representation for Zweizig from the PLF and solicited state trial Judge Ann Lininger, who serves on the Clackamas County Circuit Court, to award Zweizig "excessive and unlawful legal fees" incurred in litigating an anti-SLAPP motion to strike Plaintiff's counterclaims in a fraudulent transfer action related to the judgment against him in the Judge Hernández Lawsuit. ECF 51, ¶¶ 23, 115. Assuming without deciding that these acts are nonjudicial, the Court nevertheless concludes that Plaintiff's

allegations are implausible, at least without more, and thus conclusory and not well-pleaded. Plaintiff has alleged no facts supporting his conclusion that Judge Steele improperly asked the PLF to provide representation to Zweizig or asked Judge Lininger to award excessive fees in the fraudulent transfer action. Plaintiff, therefore, has failed to allege sufficient facts to show that Judge Steele engaged in any actionable nonjudicial acts. *See Starr*, 652 F.3d at 1216. The Court dismisses Plaintiff's claims against Judge Steele arising from any nonjudicial acts without prejudice. If Plaintiff believes that he can allege sufficient facts showing his claims against Judge Steele arise from nonjudicial acts, he may file a motion to amend under Rule 15 that complies with Local Rule 15-1.

### b.  42 U.S.C. § 1985

Plaintiff asserts a claim under § 1985 against all Defendants, alleging a conspiracy to deprive him of civil rights. To state a claim for conspiracy to discriminate under 42 U.S.C. § 1985(3), however, a plaintiff must allege the following four elements:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Carpenters v. Scott*, 463 U.S. 825, 828-29 (1983). To satisfy the first element, a plaintiff must show the existence of a conspiracy or that the defendants agreed to deprive or attempt to deprive the plaintiff of a protected right. *See Scott v. Ross*, 140 F.3d 1275, 1284 (9th Cir. 1998); *see also Winstead v. District of Columbia*, 840 F. Supp. 2d 149, 161 (D.D.C. 2012). "A mere allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988). An express agreement need not be proven—the "conspiracy can be inferred from conduct." *Scott*, 140 F.3d at 1284; *see also United States v.*

PAGE 23 – OPINION AND ORDER

*Calabrese*, 825 F.2d 1342, 1348 (9th Cir. 1987). A plaintiff must also show that the conspiracy was "motivated by a purpose (malevolent or benign) directed specifically at" a protected class. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 270 (1993).

Even if Plaintiff could allege sufficient facts to overcome judicial immunity, he still fails to state a claim under § 1985 against the state judge Defendants because he has not alleged that they engaged in any discrimination based on a protected class. Plaintiff argues that he was discriminated against as a "class of one." The Supreme Court, however, has recognized a class-of-one equal protection claim only "where the plaintiff alleges that [he or] she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Plaintiff asserts that "collusion between state and federal actors" shows discrimination against him as a class of one. Plaintiff does not, however, plausibly allege facts showing that the state judge Defendants treated him differently than similarly situated individuals without any rational basis. Thus, even if Plaintiff had alleged facts showing his § 1985 claim arose out of the state judge Defendants' nonjudicial acts, his § 1985 claim would still fail because he has not alleged discrimination based on a protected class or as a class of one. The Court therefore dismisses Rote's § 1985 claim without prejudice. If Plaintiff believes that he can plausibly allege sufficient facts showing that Judges Egan or Steele engaged in nonjudicial acts that amounted to discrimination against Plaintiff as a "class of one" by treating him without a rational basis he may file a motion to amend under Rule 15 that complies with Local Rule 15-1.

**B. PLF and Bernick's Motion to Dismiss**

### 1. 42 U.S.C. § 1983

Plaintiff asserts two claims under § 1983 against the PLF and its former executive director, Bernick. Plaintiff's first claim alleges that these Defendants violated his right to

freedom of speech under the United States Constitution.[2] His second claim alleges that these Defendants deprived him of due process, as guaranteed under the United States Constitution.

### a. Standards

To state a claim under 42 U.S.C. § 1983, a complaint must allege that a defendant, while acting under color of state law, caused a deprivation of the plaintiff's federal rights. 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). When a plaintiff asserts a claim under § 1983, the plaintiff must show both causation-in-fact and proximate (*i.e.*, legal) causation. *See Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008). Allegations of causation in a § 1983 claim "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). "Sweeping conclusory allegations [regarding causation] will not suffice." *Id.* Instead, the plaintiff must allege that he or she suffered a specific injury caused by the specific conduct of a defendant and also must show an affirmative link between the injury and the conduct of that defendant. *See Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

An entity other than a natural person, such as a local governmental entity, "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Instead, an entity "is subject to suit under § 1983 only 'if it is alleged to have caused a constitutional tort through a policy statement, ordinance, regulation,

---

[2] Plaintiff also references the Oregon Constitution in his § 1983 claim, but § 1983 allows a plaintiff to sue for violations only of federal, not state, law. *See Galen v. City of Los Angeles*, 477 U.S. 652, 662 (9th Cir. 2007) (stating that § 1983 requires a plaintiff "to demonstrate a violation of federal law, not state law"); *Canell v. Or. Dep't of Justice*, 811 F. Supp. 546, 550 (D. Or. 1993) ("[O]nly violations of the federal constitution or federal law are cognizable under 42 U.S.C. § 1983, not state law violations.").

or decision officially adopted and promulgated by that body's officers.'" *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096-97 (9th Cir. 2013) (quoting *City of St. Louis v. Parprotnik*, 485 U.S. 112, 121 (1988)). *Monell* liability may exist without any formal policy permitting the challenged conduct where the government entity has a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quoting *Gillette v. Delmore*, 979 F.3d 1342, 1346 (9th Cir. 1992)); *see also Gordon v. County of Orange*, 6 F.4th 961, 973 (9th Cir. 2021) (noting that a plaintiff can show a policy or practice through "a longstanding practice or custom" in addition to "an expressly adopted official policy").

Under narrow circumstances, a government entity's failure to train its employees may be considered a policy or custom. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) ("Only where a municipality's failure to train its employees in a relevant respect evidences a deliberate indifference to the rights of its inhabitants can such a shortcoming be properly thought of as a city policy or custom that is actionable under § 1983."). "[A] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (simplified). In still rarer instances, however, the duties of a specific employee make the need for certain training obvious. *City of Canton*, 489 U.S. at 390. A classic example involves the duty of a police officer to chase fleeing felons; that duty makes the need for training on the constitutional use of force by officers obvious. *Id.* at 390 n.10.

*Monell* liability also may be triggered "when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Gordon*, 6 F.4th at 974

PAGE 26 – OPINION AND ORDER

(quotation marks omitted). To prevail on a ratification theory, a plaintiff must show both that wrongdoer's decision was "cast in the form of a policy statement" and that a supervisor with policy making authority expressly approved of the decision. *Gillette*, 979 F.3d at 1348.

Additionally, there is no *respondeat superior* liability under § 1983. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr*, 652 F.3d at 1207 (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). The requisite showing can be established by demonstrating that the supervisor: (1) set in motion a series of acts by others or knowingly refused to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict constitutional injury; (2) had his or her own culpable action or inaction in the training, supervision, or control of his or her subordinates; (3) acquiesced in the constitutional deprivation by subordinates; or (4) engaged in conduct that shows reckless or callous indifference to the rights of others. *Id.* at 1207-08; *see also Felarca v. Birgeneau*, 891 F.3d 809, 820 (9th Cir. 2018) ("The requisite causal connection can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." (quoting *Starr*, 652 F.3d at 1207-08)). "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of [the plaintiff's] civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). A supervisor might be liable despite not personally participating in the alleged deprivation if the supervisor "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving

force of a constitutional violation." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (simplified).

### b. Analysis

At oral argument, Plaintiff emphasized that the basis for his claims against the PLF and Bernick is the PLF's decision to hire a lawyer to represent Zweizig in his lawsuit before Judge Steele "without insurance liability to Zweizig." Plaintiff contends the PLF made this decision in retaliation against him for his posts about the PLF on his blog and for his lawsuits filed against other PLF-represented lawyers. For purposes of the pending motions to dismiss, the Court will assume without deciding that the PLF and Bernick are state actors under § 1983.

### i. Supervisor Liability

For his free speech retaliation claim, Plaintiff alleges that the PLF retaliated against him for his blog posts critical of the PLF and that the PLF heeded to the requests of Zweizig and his attorneys to "punish Rote for Rote's critiques of the Court." ECF 51, ¶ 127. This punishment allegedly took the form of providing legal representation to Zweizig without charge. ECF 51, ¶¶ 108, 127. Plaintiff alleges that Bernick authorized the decision to provide legal representation for Zweizig. ECF 51, ¶¶ 22, 108. These allegations, however, fail to state a First Amendment retaliation claim under § 1983 because Plaintiff has not alleged facts showing that it is plausible that the PLF decided to provide legal representation to Zweizig in retaliation against Plaintiff's blog posts, rather than for the legitimate interests of the PLF. The fact that Plaintiff posted comments critical of the PLF does not make plausible his conclusory allegation that the PLF retaliated against him by providing legal representation without a legitimate basis to Zweizig, who is not an attorney. For example, the PLF may very well have decided to provide "repair counsel" to Zweizig after his PLF-insured attorney became unavailable. Plaintiff alleges no other facts in support of his conclusion. Without more, he fails plausibly to state a First Amendment

retaliation claim under § 1983. Further, if the PLF did not retaliate against Plaintiff, then Bernick may not be held liable for her personal involvement in the PLF's action and there would be no causal connection between her and any alleged constitutional violation by the PLF.

As for his procedural due process claim, Plaintiff alleges that Bernick knew that counsel hired by the PLF filed the Jones and Kugler Transcripts in the Judge Herndon Lawsuit. ECF 51, ¶ 84. Plaintiff also alleges, on information and belief, that the PLF maintains an "offshore bank account" from which it draws funds to "bribe judges" to hand down rulings favorable to the PLF. ECF 51, ¶ 10. As explained above, the Court will not accept as plausible these sorts of speculative, conclusory, and unsupported allegations. Plaintiff alleges no facts to support his conclusion that the PLF maintains an offshore bank account, let alone one used to bribe judges. Plaintiff also has not alleged that Bernick knew of or participated in those alleged actions. Thus, the Court does not find plausible Plaintiff's conclusory allegations. *See Fields*, 427 F.3d at 1208-09; *Starr*, 652 F.3d at 1216 (stating that to be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively").

This leaves Bernick's alleged knowledge of the filing of the Jones and Kugler Transcripts as the sole basis for Rote's procedural due process claim against Bernick. "A procedural due process claim has two elements: '(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections.'" *Miranda v. City of Casa Grande*, 15 F.4th 1219, 1224 (9th Cir. 2021) (quoting *Franceschi v. Yee*, 887 F.3d 927, 935 (9th Cir. 2018)). "The touchstone of procedural due process is notice and an opportunity to be heard." *Id.* at 1225. The fact that Bernick may have had knowledge that a PLF-provided attorney filed

the Jones and Kugler Transcripts in a pending legal proceeding is insufficient to show that

Bernick deprived Plaintiff of his right to due process. Further, Plaintiff has not alleged that he

was deprived of any notice and or opportunity to be heard with respect to the filing of those

transcripts. If counsel filed either the Jones or Kugler Transcripts in the Judge Herndon Lawsuit,

Plaintiff would have had a fair opportunity to object or to move to strike them, both before Judge

Herndon at the trial court level and later before the Oregon Court of Appeals on appeal.

Bernick's approval or knowledge that PLF-hired attorneys may have filed the transcripts does

not amount to a violation of Plaintiff's right to procedural due process. Plaintiff, therefore, fails

to state a procedural due process claim against Bernick under § 1983. Thus, the Court dismisses

Plaintiff's § 1983 claims against Bernick without prejudice. If Plaintiff believes that he can

allege sufficient facts to support his § 1983 claim against Bernick, he may file a motion to amend

under Rule 15 that complies with Local Rule 15-1.

### ii. *Monell* Liability

The Ninth Circuit applies *Monell* to private entities acting under the color of state law

sued under § 1983. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012). The PLF is

not a private entity but also not, strictly speaking, a local government entity such as a county or

city as contemplated in *Monell*. Because the Ninth Circuit has held that the standards for § 1983

liability under *Monell* also extend to private entities acting under the color of state law, the Court

assumes without deciding that *Monell* liability applies to quasi-public organizations, such as the

PLF. Thus, Plaintiff must adequately allege that the PLF implemented a policy, custom, or well-

settled practice that caused a violation of his constitutional rights, or a decisionmaker made or

ratified the alleged violation. *Gordon*, 6 F.4th at 973-94. If he alleges that the PLF's failure to

train its employees caused the constitutional violations, he must also adequately allege that the

failure amounted to a deliberate indifference to his constitutional rights. *See City of Canton*, 489 U.S. at 389.

Plaintiff alleges that the PLF failed adequately to train and supervise its employees, which led to the violation of his constitutional rights. ECF 51, ¶ 146. Plaintiff, however, does not identify exactly how the PLF failed to train its employees or which of the PLF's policies led to the "overt and tacit encouragement" of the alleged constitutional violations. ECF 51, ¶ 146. Nor does Plaintiff allege facts showing that any PLF policy amounted to a deliberate indifference to his constitutional rights. Instead, Plaintiff argues only that the PLF's "full endorsement" of the filing the Jones and Kugler Transcript "ten times in five separate lawsuits is self-evident" of the PLF's pattern or practice of constitutional violations. ECF 60, at 17. Filing a transcript in more than one lawsuit, however, does not show a policy or custom that leads to a constitutional violation. Plaintiff therefore fails to state a § 1983 claim under *Monell* against the PLF. Thus, the Court dismisses Plaintiff's § 1983 claims against the PLF without prejudice. If Plaintiff believes that he can allege sufficient facts to support his § 1983 claim against the PLF, he may file a motion to amend under Rule 15 that complies with Local Rule 15-1.

### 2.  42 U.S.C. § 1985

As explained above, to state a § 1985 claim, a plaintiff must allege discrimination based on a protected class. *See Bray*, 506 U.S. at 270. Plaintiff has not alleged that the PLF or Bernick, or indeed any Defendant, engaged in any discrimination based on a protected class. As with the State Defendants, Plaintiff argues that the PLF and Bernick discriminated against him as a "class of one." *See Vill. of Willowbrook*, 528 U.S. at 564. Plaintiff argues that the PLF and Bernick's alleged approval of filing the Jones and Kugler Transcripts in the five separate lawsuits constitutes discrimination against him as a "class of one." Approval of filing transcripts from hearings in prior cases, however, does not show that the PLF and Bernick treated Plaintiff

differently than similarly situated individuals. Further, Plaintiff has not plausibly alleged facts showing that any differential treatment from filing those transcripts lacked a rational basis. Plaintiff, therefore, has failed to state a § 1985 claim against either the PLF or Bernick. Thus, the Court dismisses Plaintiff's § 1985 claim against these Defendants without prejudice. If Plaintiff believes that he can plausibly allege sufficient facts to state a claim under § 1985, he may file a motion to amend under Rule 15 that complies with Local Rule 15-1.

### 3.   28 U.S.C. § 2201

The Declaratory Judgment Act, 28 U.S.C. § 2201, allows individuals to seek a declaration of the constitutionality of a disputed governmental action. *See Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 71 n.15 (1978). If there is an actual controversy between the parties, the court has discretion whether to exercise jurisdiction over a claim for declaratory judgment. *Argonaut Ins. Co. v. St. Francis Med. Ctr.*, --- F.4th ---, 2021 WL 5314015, at *3 (9th Cir. 2021) ("[A] district court is 'under no compulsion to exercise [its] jurisdiction' over declaratory claims." (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942))).

Here, Plaintiff seeks a declaration that Defendants violated his rights under the First and Fourteenth Amendments to the U.S. Constitution. ECF 51, ¶ 167. Because the Court concludes that Plaintiff fails to state any claim against the PLF or Bernick, the Court declines to exercise jurisdiction over Plaintiff's claim for declaratory relief. *See Staacke*, 841 F.2d at 280 (stating that the Declaratory Judgment Act does not create an independent basis for subject matter jurisdiction). Plaintiff also seeks sweeping injunctive relief against the United States and State of Oregon but does not seek any injunctive relief against the PLF or Bernick. Thus, to the extent Plaintiff intended to seek injunctive relief against the PLF or Bernick, the Court dismisses that claim without prejudice.

PAGE 32 – OPINION AND ORDER

**C. Federal Defendants' Motion to Dismiss**

   **1. Federal Judges**

   Many of Plaintiff's allegations about the federal judge Defendants involve actions taken in their judicial capacity and are therefore barred by judicial immunity. As with the state judge Defendants, Plaintiff stated at oral argument that his claims against the federal judge Defendants arise out of their nonjudicial acts, such as soliciting rulings from other judges that were adverse to Plaintiff. Assuming without deciding that judicial immunity would not protect those acts, Plaintiff has not alleged sufficient facts plausibly to support his conclusory allegations that these judges improperly solicited from another judge any retaliatory ruling unfavorable to Plaintiff. Still yet, even if Plaintiff could allege sufficient facts to support his conclusions that these federal judge Defendants engaged in activity outside the scope of their absolute judicial immunity, Plaintiff could not state any claim against these federal Defendants because there is no *Bivens* claim available against this class of Defendants for First Amendment retaliation or violations of procedural due process and the Court declines to extend *Bivens*. Thus because any amendment would be futile, for the reasons explained below, the Court dismisses Plaintiff's *Bivens* claims against the federal judge Defendants with prejudice.

   **a.  Judicial Immunity**

   As explained above with respect to the state judge Defendants, judges have absolute immunity for judicial acts performed in their judicial capacity. *Moore*, 96 F.3d at 1243-44; *Mullis*, 828 F.2d at 1388. Many of Plaintiff's allegations about the federal judge Defendants challenge judicial acts protected by absolute judicial immunity.

   **i.  Judge Kugler**

   Plaintiff alleges that during the hearing on the order to show cause why he should not be held in contempt for sending a letter to Judge Kugler, Judge Kugler encouraged the U.S.

PAGE 33 – OPINION AND ORDER

Attorney's Office to pursue criminal contempt charges against Plaintiff for sending that letter and later asked Plaintiff to withdraw the judicial ethics complaint that Plaintiff filed against Judge Kugler. ECF 51, ¶¶ 48-49. Plaintiff also alleges that Judge Kugler remanded Plaintiff's case to New Jersey state court and "strategized" with counsel representing the parties adverse to Plaintiff about litigation strategy. ECF 51, ¶¶ 42, 159. These acts are all judicial in nature and protected by absolute judicial immunity. The Court therefore dismisses Plaintiff's claims against Judge Kugler arising from these allegations with prejudice.

Plaintiff also alleges that Judge Kugler requested that the PLF provide legal representation to Zweizig for free. Assuming without deciding that this request is a nonjudicial act, Plaintiff has failed to allege sufficient facts showing the plausibility of Plaintiff's contention that U.S. District Judge Kugler called the PLF. Plaintiff fails to provide any well-pleaded facts in support of his conclusory allegation. Plaintiff also alleges that Judge Kugler solicited various rulings adverse to Plaintiff from other judges, including U.S. Magistrate Judge Papak, state court Judge Weishaupl, U.S. District Judge Mosman, or arbitrator Crow. ECF 51, ¶¶ 15-16, 57, 71, 103. Plaintiff fails to support his speculative and conclusory allegations, many of which are made on information and belief, with sufficient supporting facts. The only supporting fact that Plaintiff offers is that Judges Kugler and Mosman both served as judges on the Foreign Intelligence Surveillance Court. ECF 51, ¶ 103. That fact, however, does not make Plaintiff's other allegations plausible, especially that Judge Kugler called Judge Mosman to request that he rule against Plaintiff. Thus, Plaintiff's conclusory allegations do not overcome judicial immunity. Further, because there is no *Bivens* claim available to Plaintiff, as explained below, the Court dismisses Plaintiff's *Bivens* claim against Judge Kugler with prejudice.

### ii. Judge Papak

Plaintiff alleges that Judge Papak confirmed Crow's arbitration award, ignored evidence in confirming the arbitration award, refused to recuse himself, engaged with counsel representing parties adverse to Plaintiff about litigation strategy, and granted motions to quash. ECF 51, ¶¶ 15, 63, 142, 159. These are all judicial acts that provide Judge Papak with absolute judicial immunity. The Court therefore dismisses with prejudice Plaintiff's claims against Judge Papak arising from these judicial acts.

Plaintiff also alleges, on information and belief, that Judge Papak called Judge Herndon to request that he deny Plaintiff due process. ECF 51, ¶ 88. This allegation does not overcome judicial immunity because Plaintiff has not alleged sufficient facts to establish plausibility. *See Fields*, 427 F.3d at 1208-09. Thus, Plaintiff has alleged no facts to support his conclusory allegation made on information and belief. As explained below, because there is no *Bivens* claim available to Plaintiff, the Court dismisses Rote's *Bivens* claim against Judge Papak with prejudice.

### iii. Judge Hernández

Plaintiff's only allegations about U.S. District Judge Hernández concern only judicial acts that are protected by absolute judicial immunity. Plaintiff alleges that Judge Hernández granted a motion to quash Plaintiff's subpoena for the recordings of the jury trial, denied his request to interview the jury in that trial, denied certain discovery requests, granted a motion *in limine* that prevented Plaintiff from introducing evidence of the forensic report concerning Zweizig's hard drive, and conspired with other judges in making these rulings. ECF 51, ¶¶ 14, 91, 100, 159. Even accepting Plaintiff's factual allegations of conspiracy, Plaintiff only challenges action that are judicial acts and thus protected by judicial immunity. *See Ashelman*, 793 F.2d at 1078.

PAGE 35 – OPINION AND ORDER

Plaintiff also alleges that it "is not known" who ordered the destruction of the recording of the jury trial in the Judge Hernández Lawsuit, but he alleges that Judge Hernández was the only one with authority to do so. ECF 51, ¶ 101. Even if Judge Hernández had asked the court reporter (Walker) to destroy the recording of the trial (and Plaintiff has alleged absolutely no evidence of that), such an act would be judicial in nature because it involved actions taken in a judge's judicial capacity. *See McGuire*, 2009 WL 4456310, at *4 ("An act is judicial in nature if it is a function normally performed by a judge and the parties to the act were dealing with the judge in his judicial capacity." (citing *Stump*, 435 U.S. at 362)); *see also Tanner*, 879 F.2d at 576 (stating that judges have "absolute immunity even when their actions are erroneous, malicious, or in excess of judicial authority"). As explained below, because there is no *Bivens* claim available to Plaintiff, the Court dismisses Plaintiff's *Bivens* claim against Judge Hernández with prejudice.

### iv. Judge Mosman

Plaintiff alleges that U.S. District Judge Mosman refused to recuse himself and that he relied on false allegations to dismiss Plaintiff's claims against lawyers represented by the PLF. ECF 51, ¶¶ 13, 114. Plaintiff alleges that the fact Judge Mosman relied on false allegations in making that ruling is "self-evident of a *quid pro quo*" agreement between him and the PLF and that he should have disclosed that agreement to Plaintiff. ECF 51, ¶¶ 13, 114. Even without considering Plaintiff's allegations to be entirely speculative and conclusory and even if there were such an agreement, Judge Mosman's order dismissing Plaintiff's claims is a judicial act and thus protected by absolute judicial immunity. *See Ashelman*, 793 F.2d at 1078.

Plaintiff argues that judicial immunity does not apply to that dismissal because the Ninth Circuit later concluded that Judge Mosman lacked subject matter jurisdiction over some of the claims. To lose the protection of judicial immunity, however, a judge must act in clear absence

of all subject matter jurisdiction, not merely in excess of jurisdiction. *See Mullis*, 828 F.2d at 1389 (distinguishing between "an act in the clear absence of jurisdiction" and "an act in excess of jurisdiction" for purposes of judicial immunity and stating that a "clear absence of all jurisdiction means a clear lack of all subject matter jurisdiction"); *see also Malina v. Gonzales*, 994 F.2d 1121, 1125 (5th Cir. 1993) ("Where a court has some subject-matter jurisdiction, there is sufficient jurisdiction for immunity purposes."). Further, "the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 357 (1978).

Judge Mosman's dismissal of Plaintiff's claims against the non-federal defendants is protected by judicial immunity because he acted only in excess of jurisdiction with respect to some of Plaintiff's claims and retained jurisdiction over Plaintiff's claims asserted against Walker. In other words, when Judge Mosman dismissed Plaintiff's claims against Walker and the other non-federal defendants, he did not act in clear absence of all jurisdiction. Thus, Judge Mosman's orders of dismissal are protected by judicial immunity. The Court dismisses with prejudice Plaintiff's claims against Judge Mosman arising from those judicial acts.

Plaintiff also alleges, on information and belief, that Judge Mosman requested that the PLF to provide Zweizig with representation, solicited arbitrator Crow to find in favor of Zweizig, and ordered court reporter Walker to destroy the recordings of the jury trial from the Judge Hernández Lawsuit. Further, Plaintiff alleges that Judge Mosman "solicited" rulings adverse to Plaintiff from Judges Papak, Steele, and Lininger. ECF 51, ¶¶ 15, 107, 116. Plaintiff, however, does not support these speculative and conclusory allegations with any facts and thus has failed to show plausibility. *See Starr*, 652 F.3d at 1216. Accordingly, these allegations also do not overcome judicial immunity. Finally, as explained below, because there is no *Bivens* claim

PAGE 37 – OPINION AND ORDER

available to Plaintiff, the Court dismisses Plaintiff's *Bivens* claim against Judge Mosman with prejudice.

### b. *Bivens*

Even if Plaintiff could allege facts sufficient to overcome judicial immunity for what he contends are nonjudicial acts, Plaintiff could not state a *Bivens* claim against any of the federal judge Defendants because there is no available *Bivens* claim that would be implicated under these facts. At oral argument, all parties agreed to treat Plaintiff's § 1983 claims against the Federal Defendants as if they were alleged under *Bivens*.[3] *See Hartman v. Moore*, 547 U.S. 250, 255 n.2 (2006) ("[A] *Bivens* action is the federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983.").

The Supreme Court has thus far accepted the availability of *Bivens* actions in only three contexts: violation of the Fourth Amendment's prohibition of unreasonable searches and seizures; violation of the Eighth Amendment's prohibition of cruel and unusual punishment; and violation of the Fifth Amendment's prohibition of sex discrimination. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854-55 (2017) (describing the three *Bivens* contexts). The Supreme Court "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at 1857. Extending *Bivens* "is a significant step under separation-of-powers principles," and Congress is the branch of government with the "substantial responsibility to determine whether, and the

---

[3] Section 1983 provides recourse only for the actions of persons acting under color of state law, not federal law, although the law violated must be federal. *See District of Columbia v. Carter*, 409 U.S. 418, 424-25 (1973). Congress enacted § 1983 as a mechanism to hold state officials accountable in federal court. *Id.*, at 427-28. Section 1983 is not the proper mechanism to sue federal officials. *Id.* Instead, a *Bivens* action allows plaintiffs to sue federal officials for violations of certain constitutional rights. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971).

PAGE 38 – OPINION AND ORDER

extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government." *Id.* at 1856.

The Supreme Court "has 'consistently refused to extend *Bivens* [liability] to any new context or new category of defendants.' . . . for the past 30 years." *Id.* at 1857 (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001))). "The [Supreme] Court's precedents now make clear that a *Bivens* remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Id.* (quoting *Carlson v. Green*, 446 U.S. 14, 18 (1980)). Thus, in considering possible extensions of *Bivens*, courts "engage in a two-step inquiry." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). The first step is to "inquire whether the request involves a claim that arises in a 'new context' or involves a 'new category of defendants.'" *Id.* (quoting *Malesko*, 534 U.S. at 68). If so, the second step is to "ask whether there are any special factors that counsel hesitation about granting the extension." *Id.* (simplified).

Plaintiff's claims present a new context because they arise under different constitutional rights (the First Amendment and the Fifth Amendment right to procedural due process) and involve a new category of defendants, namely, federal judges. Plaintiff has not alleged that Defendants conducted an unreasonable search or seizure, imposed cruel and unusual punishment, or discriminated against him based on sex. Because Plaintiff's claims arise in a new context, the Court considers whether any special factors counsel hesitation. The Court finds persuasive the special factors described in the Federal Defendants' motion. ECF 64, at 25-26. These factors include: (1) Plaintiff's ability to appeal the underlying legal decisions that he claims were improperly influenced by the federal judges, which serves as an alternative remedial structure to a new *Bivens* claim; and (2) the fact that the legislative branch is best positioned to determine

federal employees' exposure to monetary damages for constitutional torts, which raises separation of powers concerns. Accordingly, the Court declines to extend *Bivens* to this context. Because there is no *Bivens* claim available to Plaintiff even if he could allege facts sufficient to overcome judicial immunity, the Court dismisses Plaintiff's *Bivens* claims against federal Judges Kugler, Papak, Hernández, and Mosman with prejudice.

### c.  42 U.S.C. § 1985

Even if Plaintiff could plead sufficient facts to overcome judicial immunity, Plaintiff's claim under § 1985 against these Defendants would fail because he has not alleged facts showing that the federal judge Defendants engaged in any conspiracy to discriminate against Plaintiff based any protected class. *See Bray*, 506 U.S. at 270. Instead, as with his § 1985 claim against the PLF and Bernick, Plaintiff contends that the federal judge Defendants discriminated against him as a "class of one" as recognized in *Village of Willowbrook*. Plaintiff argues that the federal judge Defendants discriminated against him as a class of one by considering the Jones and Kugler Transcripts filed in their cases. ECF 65, at 19. Plaintiff contends that consideration of that evidence affected these judges' rulings. The fact that the federal judge Defendants may have considered the Jones and Kugler Transcripts filed in their own cases, however, does not show that those judges treated Plaintiff differently than other similarly situated individuals and did so with no rational basis. It also squarely runs into the problem of judicial immunity because these challenged actions involve judicial determinations in the judges' own cases, which are judicial acts, not nonjudicial acts. Thus, Plaintiff has failed to state a claim under § 1985 against the federal judge Defendants. Because he did not allege any nonjudicial conduct to support his § 1985 claim against the federal judge Defendants, the Court dismisses this claim with prejudice.

2.  **Walker**

    a.  **Issue Preclusion**

The Federal Defendants argue that both issue and claim preclusion bar Plaintiff's claims against court reporter Walker. Issue preclusion, also known as collateral estoppel, "precludes relitigation of an issue already litigated and determined in a previous proceeding between the same parties." *Pike v. Hester*, 891 F.3d 1131, 1138 (9th Cir. 2018); *see also Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988) ("The doctrine of issue preclusion prevents relitigation of all issues of fact or law that were actually litigated and necessarily decided in a prior proceeding. . . . The issue must have been actually decided after a full and fair opportunity for litigation." (quotation marks and citations omitted)). The party asserting issue preclusion must show: (1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessarily decided, which is also described as necessary or essential to the judgment. *See Howard v. City of Coos Bay*, 871 F.3d 1032, 1041 (9th Cir. 2017).

The Federal Defendants argue that the accuracy of Walker's transcript was already litigated in the Judge Hernández Lawsuit, the case in which Walker allegedly falsified the jury trial transcript. Federal Defendants argue that issue preclusion applies because Judge Hernández already denied Plaintiff's motion to compel Walker's transcription materials. *See* 3:15-cv-2401-HZ, ECF 313. Whether Walker falsified the trial transcript, however, was not necessary to the resolution of that motion to compel and thus was not actually litigated or decided in Judge Hernández's order. The order simply states: "Defendant has provided no basis for the Court to compel the production of Ms. Walker's recordings. The proper avenue for Defendant to challenge the accuracy of the certified transcript is through Federal Rule of Appellate

Procedure 10." 3:15-cv-2401-HZ, ECF 313. Thus, Defendants have not shown that the issue of the accuracy of the trial transcript was fully litigated in the Judge Hernández Lawsuit.

The Federal Defendants also argue that the issue of the accuracy of Walker's transcript was fully litigated in the Judge Mosman Lawsuit. After the conclusion of the Judge Hernández Lawsuit, Plaintiff added Walker as a defendant in the Judge Mosman Lawsuit and asserted claims against her for fraud and intentional infliction of emotional distress. The United States substituted itself as a defendant in place of Walker and removed the case to federal court. Judge Mosman then dismissed the United States from the case because Plaintiff's claims against Walker did not fall within the United States' waiver of sovereign immunity under the FTCA. *See* 3:19-cv-82-MO, ECF 38, at 7. Plaintiff did not appeal Judge Mosman's order dismissing the United States from the case.

The Federal Defendants argue that in the Judge Mosman Lawsuit, as in this lawsuit, Plaintiff claimed that the defendants, including Walker, conspired to deprive him of due process. The Federal Defendants argue that claim against Walker in the Judge Mosman Lawsuit required resolution of whether Walker falsified the Judge Hernández trial transcript. That issue, however, was never "actually litigated" in the Judge Mosman Lawsuit. Instead, Judge Mosman dismissed the United States from the case for lack of subject matter jurisdiction. Issue preclusion therefore does not apply.

### b. Claim Preclusion

Under the doctrine of claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). An action is barred when an earlier adjudication: (1) involved the same claim as the later action, (2) reached a

final judgment on the merits, and (3) involved the same parties or their privies. *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 952 (9th Cir. 2002).

Under Rule 41(b) of the Federal Rules of Civil Procedure, a dismissal for lack of subject matter jurisdiction is not an adjudication on the merits. The Supreme Court has held that a dismissal for lack of jurisdiction under Rule 41(b) is "not ordinarily a bar to a subsequent action on the same claim" because "there must be at least one decision on a right between the parties" before preclusionary principles apply. *Costello v. United States*, 365 U.S. 265, 285 (1961) (quotation marks omitted); *see also Haywood v. Drown*, 556 U.S. 729, 766 (2009) (Thomas, J., dissenting) ("And because the dismissal of § 1983 claims from state court pursuant to NYCLA § 24 is for lack of subject-matter jurisdiction, it has no preclusive effect on claims refiled in federal court and thus does not alter the substance of the federal claim." (citations omitted)); *cf. CRST Van Expedited, Inc. v. EEOC*, 578 U.S. 419, 433 (2016) (describing dismissal based on sovereign immunity as a dismissal for "nonmerits reasons"). The Ninth Circuit similarly has described that a dismissal for lack of subject matter jurisdiction does not serve as an adjudication on the merits for purposes of claim preclusion. *See Harris v. Arizona Bd. of Regents*, 730 F. App'x 439, 440 (9th Cir. 2018) (concluding that a dismissal for lack of subject matter jurisdiction "would not constitute an adjudication on the merits" and citing Rule 41(b) of the Arizona Rules of Civil Procedure, which is the same in relevant part as the Rule 41(b) of the Federal Rules of Civil Procedure); *In re Brooks-Hamilton*, 271 F. App'x 654, 657 (9th Cir. 2008) (stating that "[a] dismissal for lack of subject matter jurisdiction is not a final judgment on the merits, Fed. R. Civ. P. 41(b)" and concluding that such a dismissal precludes a subsequent determination of the issue of jurisdiction but not a subsequent determination of any merits issue); *In re Elias*, 216 F.3d 1082, 2000 WL 431589, at *1 (9th Cir. 2000) (unpublished table decision)

("A dismissal for sovereign immunity, however, is based on jurisdictional grounds; therefore, it is not a decision on the merits for res judicata purposes, at least as to parties other than the state."); *cf. Hampton v. Pac. Inv. Mgmt. Co. LLC*, 869 F.3d 844, 846 (9th Cir. 2017) ("Dismissals for lack of subject-matter jurisdiction . . . must be without prejudice, because a lack of jurisdiction deprives the dismissing court of any power to adjudicate the merits of the case.").

As discussed in the cases cited above, Judge Mosman's dismissal for lack of subject matter jurisdiction does not give rise to claim preclusion. *See also Wood v. County of Contra Costa*, 2020 WL 1505717, at *3 (N.D. Cal. Mar. 30, 2020) ("The Prior Action, however, was dismissed for lack of subject matter jurisdiction under the 'Rooker-Feldman' doctrine, and a dismissal for lack of subject matter jurisdiction does not operate as an adjudication on the merits. Accordingly, to the extent the First Cause of Action is asserted on behalf of TP, it is not barred by res judicata." (citations omitted)); *Watson v. Chessman*, 362 F. Supp. 2d 1190, 1194 (S.D. Cal. 2005) ("Dismissal for lack of subject matter jurisdiction is not a judgment on the merits, and therefore it has no claim preclusive or res judicata effect."). The Court next considers the merits of Plaintiff's claims against Walker.

### c. *Bivens*

As explained above, the parties agreed to treat Plaintiff's § 1983 claims against the Federal Defendants as alleged under *Bivens*. As with Plaintiff's claims against the federal judges, Plaintiff's claim against Walker presents a new *Bivens* context and a new type of defendant. Plaintiff alleges that Walker retaliated against Plaintiff's exercise of his free speech rights by intentionally omitting two statements from the jury trial transcript in the Judge Hernández Lawsuit and later destroying the recordings of that trial allegedly at the request of either Judge Hernández or Judge Mosman. Plaintiff also asserts these acts amount to a violation of his right to procedural due process. These claims depart from the recognized *Bivens* contexts because they

arise under different constitutional rights and involve a new class of defendants, here, court reporters. *See Abbasi*, 137 S. Ct. at 1854-55. Plaintiff has not alleged that Walker conducted an unreasonable search and seizure, inflicted cruel and unusual punishment, or discriminated against him based on sex. For the reasons stated above with respect to the federal judge Defendants, the Court declines to extend *Bivens* to Plaintiff's claims against Walker. Because there is no *Bivens* claim available to Plaintiff for his claims against Walker, the Court dismisses Plaintiff's *Bivens* claim against Walker with prejudice.

### d.   42 U.S.C. § 1985

A plaintiff may sue under § 1985 for the conspiracies committed by private actors. *Griffin v. Breckenridge*, 403 U.S. 88, 101 (1971). Thus, Plaintiff's claim under § 1985 against Walker does not fail for lack of state action. Rather, Plaintiff's claim under § 1985 against fails because Plaintiff has not alleged sufficient facts plausibly showing that Walker engaged in a conspiracy to discriminate against Plaintiff based on any protected class. *See Bray*, 506 U.S. at 270. As with Plaintiff's claims under § 1985 against the PLF, Bernick, and the federal judge Defendants, Plaintiff contends that Walker discriminated against him as a "class of one," a theory recognized in *Village of Willowbrook*. Plaintiff, however, fails to allege sufficient facts plausibility to state a claim under that theory. Accordingly, the Court dismisses Plaintiff's claim under § 1985 claim against Walker without prejudice. If Plaintiff believes that he can allege sufficient facts showing that Walker discriminated against him as a "class of one," he may file a motion to amend under Rule 15 that complies with Local Rule 15-1.

## D.  Leave to Amend

Plaintiff requests leave to amend his Second Amended Complaint. The Court, however, will not consider that request in the abstract. If Plaintiff believes that he can cure the deficiencies identified in this Opinion and Order, he may file a motion to amend under Rule 15 if his motion

PAGE 45 – OPINION AND ORDER

complies with Local Rule 15-1 by attaching a proposed Third Amended Complaint. Further,

Plaintiff only may move for leave to amend with respect to the claims that the Court has

dismissed without prejudice in this Opinion and Order. These claims are Plaintiff's claims under

§§ 1983 and 1985 against Judge Egan and Judge Steele arising from any nonjudicial acts;

Plaintiff's claims under §§ 1983, 1985, and 2201 against the PLF and Bernick; and Plaintiff's

claim under § 1985 against Walker. In addition, Plaintiff may not add any new defendants in a

proposed Third Amended Complaint.

**CONCLUSION**

The Court GRANTS all pending motions to dismiss (ECF 55, ECF 56, and ECF 64) and

dismisses all claims asserted against all Defendants other than the Colorado Judicial Department

and Colorado Judge Elizabeth Weishaupl.

**IT IS SO ORDERED**.

DATED this 30th day of December, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

## CERTIFICATE OF SERVICE

I certify that on August __17__, 2022, I served the foregoing DECLARATION OF

NATHANIEL AGGREY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS upon the

parties hereto by the method indicated below, and addressed to the following:

Timothy C. Rote                         ___ HAND DELIVERY
7427 SW Coho Ct. #200                   _X_ MAIL DELIVERY
Tualatin, OR 97062                      ___ OVERNIGHT MAIL
    Plaintiff Pro Se                    ___ TELECOPY (FAX)
                                        _X_ E-MAIL timothy.rote@gmail.com
                                        ___ E-SERVE


_____*s/ Nathaniel Aggrey*_____
NATHANIEL AGGREY #172283
Assistant Attorney General
Trial Attorney
Tel (503) 947-4700
Fax (503) 947-4791
Nathaniel.Aggrey@doj.state.or.us
Of Attorneys for Defendants Oregon Judicial
Department, Emerson, Kamins, Liniger,
Mooney, Steele, and Wise


Page 1 -   CERTIFICATE OF SERVICE
NA3/km7/522550677